Thomas W. POWELL, Appellant (Appellant-Contestant below),

v.

BOARD OF TRUSTEES OF CROOK COUNTY SCHOOL DISTRICT NO. I, CROOK COUNTY, Wyoming, Appellee (Appellee-Respondent below).

No. 4524.

Supreme Court of Wyoming.

June 11, 1976.

Richard S. Dumbrill, of Jones & Dumbrill, Newcastle, for appellant.

Edward S. Halsey, Newcastle, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

## INTRODUCTION

█ It is axiomatic that the courts should not undertake to administer the school systems of Wyoming. We should not substitute our judgment in educational matters for those of school boards and administrators. We said as much in *Shenefield v. Sheridan County School District No. 1*, Wyo., 544 P.2d 870, 874:

". . . This court has consistently recognized the importance of administrative boards and their decisions. It has adhered to the rule that our courts will not substitute their judgment for that of the particular board or commission . . . ." (Citing cases) [1]

We reaffirm and again embrace this rule. Still, in the school systems, there are some interrelated obligations which are sometimes overlooked, disregarded, or—perhaps—simply not understood by school administrators, teachers, lawyers, judges, and even the public at large. We need to contemplate these as we revisit the manner in which school administrators and teachers are legally obligated to conduct themselves with respect to each other and their professional duties.

First off, the general public—indeed, all of society, has a massive interest in maintaining good schools. "Good schools" means good teachers—and by "good teachers" we mean "good" in all important aspects of their professional lives.

Secondly, however, we must remember that teachers are mere humans with the same strengths, foibles and frailties common to all of us. It may, therefore, be assumed that an individual teacher may or may not—for one reason or the other—be able to fit into a given school system. Whether or not the teacher can adjust to the established order does not ·change the fact that he or she is still a human being. The heavy responsibility that the teacher agrees to and must discharge to the organized school structure is placed into apposition by the school board's counterobligation not to play whimsical games with the lives of those whose service they have enlisted. If the teacher does not measure up, according to reasonable standards of professional requirement, the teacher may be removed, but in the process of removal, *all* the rights and interests of *all* of those concerned must be considered. This includes the rights of

(a) Society;

(b) The children;

(c) The parents;

(d) The other school teachers;

(e) The administrators; and

(f) The teacher himself.

In protecting *all* of these various rights, the court must see that the rules and the law with respect to removal and termination are followed. If they are not—and in the discharge of our duties of protecting all of the peoples' interests—the court will not approve the actions of the board. School boards must follow the law in dismissing teachers. Where they do not—as here—the dismissal cannot receive our sanction.

## BACKGROUND

When he was dismissed (or terminated) [2], the appellant Powell was, and had

1. *Sweetwater County Planning Committee v. Hinkle*, Wyo., 493 P.2d 1050, 1052 (1972) (review of action of County Planning Committee for Organization of School Districts) ; *Gore v. John*, 61 Wyo. 246, 276, 157 P.2d 552, 562 (1945) (review of action of the Public Service Commission) ; *Rayburne v. Queen*, 78 Wyo. 359, 370, 326 P.2d 1108, 1111 (1958) ; *Howard v. Lindmier*, 67 Wyo. 78, 86, 214 P.2d 737, 739 (1949) (action of Board of Land Commissioners) ; and *J. Ray McDermott & Co., Inc. v. Hudson*, Wyo., 348 P.2d 73, 75 (1960) (action of State Board of Equalization).

2. It is necessary to use the words "dismissed" and "terminated" interchangeably and synonymously in this opinion. Even though the statute makes a distinction in the two terms, which we recognized and discussed

been for eight years, a continuing contract teacher in the Moorcroft High School, Crook County, Wyoming, with some constitutionally-protected rights in his employment. *Roush v. Sweetwater County School District No. 1,* Wyo., 497 P.2d 540.

Powell received a letter informing him that his superintendent was recommending his contract not be renewed for the school year 1974–1975, under and by authority of § 21.1–160, W.S.1957, 1975 Cum.Supp., pertaining to suspension and dismissal of teachers. A hearing was demanded and had on an oral agreement, whereby the parties acknowledged that the only charges against which the teacher need defend are the following:

"1. Neglect of duty (leaving the classroom and students unattended).

"2. Failure to follow district policy as outlined under general regulations. (N) Page [sic] 31 and 32.

"3. The inability to establish rapport with students.

"4. Insubordination."

Of the four charges, only "neglect of duty" and "insubordination" are specific statutory grounds for dismissal (§ 21.1–160, W.S.1957, 1975 Cum.Supp.). "Failure to follow district policy" and "inability to establish rapport with the students" are grounds for termination only if they may be included in the phrase, "other good or just cause," as recited by § 21.1–160, W.S. 1957, 1975 Cum.Supp.[3]

After the hearing the Board convened to consider the question at hand, with the Minutes of the Board reflecting the following:

"Chairman Moline called the Board back into regular session and called for a vote on the following order: Order to terminate the contract of Thomas W. Powell at the conclusion of the 1973–74 school year *on grounds of failure to establish rapport with students.* The vote being 8 to 0, It was therefore ordered by the Board of Trustees of Crook County School District No. One, that the contestant's employment with Crook County School District No. One be, and is, hereby terminated at the conclusion of the 1973–74 school year." [Emphasis supplied]

The only relevant *purported* "finding of fact" is:

A. "That the Contestant has been *unable to control the conduct of his students* as evidenced by the unusual amount of disciplinary problems that have developed in his classroom during the 1973–1974 school year, which in turn has caused a great amount of dissention [sic] between the Administration and the Contestant." [Emphasis supplied]

The applicable *purported* "conclusion of law" made by the Board is:

B. "That the Contestant *failed to establish rapport* with his students during the 1973–1974 school year." [Emphasis supplied]

Of course, "B" above is not a conclusion of law. However, in order to thoroughly inquire of the question, we are assuming that it was placed in "conclusions of law" by mistake; and, *for purposes of this part of our opinion only,* we treat it as though it were categorized as a "finding of fact."[4]

---

in *Monahan v. Board of Trustees, etc., County of Fremont,* Wyo., 486 P.2d 235 (§ 21.1–152, W.S.1957, 1975 Cum.Supp.—Definitions), the teacher in this case was given notice, which included grounds for dismissal under § 21.1–160, W.S.1957, 1975 Cum.Supp. (entitled "Suspension or dismissal of teachers."), while the stipulation of the parties speaks of the hearing being had under the entire Education Code, as well as the sections having to do with *termination* only. This fact makes no material difference in the law of this opinion.

3. The statute provides, in pertinent part: "The board may suspend or dismiss any teacher for incompetency, neglect of duty, immorality, insubordination, *or any other good or just cause.*" [Emphasis supplied.] There must be "cause" whether we are speaking of "termination" or "dismissal." *Monahan v. Board of Trustees, etc., County of Fremont,* Wyo., 486 P.2d 235, supra, Note 2.

4. Both "finding" "A" and "conclusion" "B" are mere non-factual conclusions and therefore do not qualify as legitimate findings of

In light of the charges lodged—the Board's order, together with the "finding of fact," which finding determined—only that the teacher

"has been unable to control the conduct of his students . . ."

and our gratuitous assumption that he

"failed to establish rapport with his students . . ."

is also a finding of fact for the limited purpose of this portion of the problem's analysis, we, therefore must come to the following conclusions:

(1) He was found *not guilty* of the charge of "neglect of duty."

(2) He was found *not guilty* of the charge of "insubordination."

(3) He was found *not guilty* of a charge of "failure to follow district policy as outlined under general regulations. (N) Pages 31 and 32." [5]

(4) He was found *guilty* of a professional deficiency which allegedly constituted statutory "good or just causes[s]" for termination, namely,

(a) *inability to establish rapport* and

(b) an *inability to control the conduct of the students.*

It must be remembered that, of these last two complaints, the order of the Board *found him guilty* of only one—inability to establish rapport. The teacher was *only charged* with one—failure to establish rapport. The other student-disciplinary accusation, consisting of an inability "to control the conduct of the students," was not brought against him. We ask, rhetorically, if there is not a fatal, irreconcilable inconsistency between a finding of not guilty of the charge of failure to follow the Board's student-discipline policy and a finding of fact that the contestant is "unable to control the conduct of the students," a charge that was *not* made against him.[6]

### THE ISSUE

We delineate the only issue for decision to be whether or not a failure to establish "rapport" with the students is ground for dismissal as ordered by the Board. Since we find that such ground does not exist, it is not necessary to determine whether there was sufficient evidence to support the order of failure to establish rapport.

*Exclusion of Inability to Control Conduct as an Issue on Appeal*

In defining the issue, we exclude the question of whether or not the appellant

---

fact in any case. *Shenefield v. Sheridan County School District No. 1*, Wyo., 544 P.2d 870, supra. Also, see *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550 (1960). See this matter discussed, infra.

5. In General Regulations "N" the subject of *discipline* is considered and provides as follows:

"2. *Discipline*—Meaningful classroom activity and motivation of students through preparation and planning should be the rule. Teachers should stress broad standards of conduct, not 'rules and regulations.' Students should be expected to fulfill their obligations to themselves in obtaining more than a 'minimum standards' type of education. Therefore, within a humanistic context, teachers will provide necessary guidance for continuing student self actualization. In those instances that students are continuously disruptive, the resources of the district; i. e., administrators, guidance counselors, etc., will be used to attempt to rehabilitate the student prior to taking ac-

tion designed to remove the student from school.

"The following procedures will be followed in student discipline:

"a. The student will be informed of his unacceptable behavior by the teacher.

"b. The principal and/or counselor shall be informed of a student's unacceptable behavior.

"c. Parents will be informed of a student's unacceptable behavior.

"d. A parental conference will be arranged.

"e. If [the] behavior continues, a one day suspension.

"f. If the behavior continues, a three day suspension.

"g. If the behavior continues, a 10 day suspension as outlined in the Wyoming Code.

"h. Referral to the superintendent."

6. Since Powell was charged with failing to follow the Board's student-discipline policy and the Board entered no order with respect thereto, he stands presumptively innocent of this charge for all purposes of this appeal.

was unable to control the conduct of his students. Inability to control conduct is a student-discipline matter and the ability or inability of the teacher to maintain discipline in the classroom is not in issue because, while he was charged with a failure to follow the District's discipline policy, he stands, by reason of the Board's silent response, not guilty of this. Mr. Powell was *not* charged with any *other* disciplinary shortcoming. The result of the operation of a presumption of innocence seems to us to say, with reference to the Board's disciplinary policy [7], that:

(a) He was able to meaningfully motivate the students through preparation and planning;

(b) He stressed Board standards of conduct—not "rules and regulations";

(c) He provided "necessary guidance for continuing student self actualization"; and

(d) Where the students were "continuously disruptive," it is to be assumed that the teacher, according to Board policy, employed and called upon "the resources of the district; i.e., administrators, guidance counselors, etc.," in an effort to "rehabilitate the student prior to taking action designed to remove the student from school." It must be further assumed that the appellant employed and gave effect to the procedures established by the Board to be followed for student discipline, namely, informing student, principal and counselor and parents of unacceptable behavior—that he discharged his obligations with respect to arranging parental conferences and he adhered to the rules with respect to suspension.

### Inability to Control Conduct

Should inability to control the conduct of the students be excluded from our consideration? The only student-discipline shortcoming lodged against Powell was his failure to follow District policy, with respect to which he stands innocent. He is,

nonetheless, being terminated for a disciplinary shortcoming with which he had not been charged—namely, his inability "to control the conduct of his students." In other words, inability to maintain discipline.

Let it be conceded that a charge of inability to maintain discipline, supported by facts (i.e., "control the conduct of his students"), is "good or just cause" [8] for terminating or dismissing a contract teacher. The question remains—can the appellant be terminated or dismissed for this reason when he is *not charged* with this professional deficiency, while, at the same time, he is presumed to have followed the Board's detailed policy of enforcing student discipline—an alleged fault concerning which charges *were* lodged?

### Notice

As we have said, Mr. Powell was a continuing contract teacher with eight years of his life invested in the Moorcroft school system. The Wyoming Statutes, § 21.1–154, W.S.1957, 1975 Cum.Supp., provide that such a teacher shall be employed

" . . . on a continuing basis from year to year without annual contract renewal . . ."

In *Roush v. Sweetwater County School District No. 1*, Wyo., 497 P.2d 540, 542, and *Board of Trustees, Laramie County School District No. 1 v. Sydney Spiegel*, Wyo., 549 P.2d 1161 (1976), we quoted with approval from *Endicott v. Van Petten*, D.C.Kan., 330 F.Supp. 878, 883, the following:

" '* * * *The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest.* This type of statute gives teachers a certain degree of security in their positions and guarantees freedom to teach by protecting them from removal on unfounded charges * * *.' " [Emphasis supplied]

---

7. See the Board's disciplinary policy, Note 5, supra.

8. Section 21.1–160, W.S.1957, 1975 Cum. Supp., supra.

The notice sections of the Administrative Procedure Act, § 9–276.25 (a) and (b) (4), W.S.1957, 1975 Cum.Supp., provide:

"§ 9–276.25. Contested cases; procedure generally; subpoenas.—

"(a) *Notice to be given.*—In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail

. . .

"(b) *Statement in notice.*—The notice shall include . . . :

\*    \*    \*    \*    \*    \*

"(4) *A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a more definite and detailed statement shall be furnished.*" [Emphasis supplied]

Likewise, written notice of dismissal is required by the Education Code, § 21.1–160 (a), W.S.1957, 1975 Cum.Supp., in the following words:

"(a) Written Notice: Suspension or dismissal proceedings shall be initiated by the superintendent or any member of the board delivering to the teacher a written notice thereof, *together with written reasons therefor.*" [Emphasis supplied]

The hearing will be conducted *"on the reasons* (as referred to in § 21.1–160(b), W.S.1957, 1975 Cum.Supp.), *for such dismissal . . ."* [9] [Emphasis supplied]

▆ We hold that the only student-disciplinary issue of which the teacher was *notified* was a failure to follow the Board's policy with respect to discipline and, having made no finding concerning this charge, thereby leaving him to be presumed innocent thereof, the appellant may not now be found guilty of a student-disciplinary deficiency (unable to control conduct), with which he had *not* been charged.

In order to satisfy the minimum rights of the appellant he must have had adequate, specific notice of those things with which he was being charged. This is a due-process guarantee which allows him to prepare for his hearing.

We said in *Glenn v. Board of County Commissioners,* Sheridan County, Wyo., 440 P.2d 1, 4 (1968):

". . . The important question is whether or not the parties had fair notice of the issues involved . . ."

Did Powell have fair notice that he could be found guilty of a student-discipline inadequacy (inability to control conduct), concerning which there had been no charges made, even though he were to successfully defend against the charge of failure to follow student-disciplinary policies of the Board? We hold that he did not.

What is "fair notice" under *Glenn v. Board of County Commissioners,* supra, as applied to this case? If Mr. Powell was going to be required to defend a student-disciplinary charge, it was necessary to specifically inform and notify him as contemplated by § 9–276.25(a) and (b)(4) and § 21.1–160(b), supra. He had a right to believe that the only student-discipline complaint was embraced in the charge of not following the Board's discipline policy. According to the manner in which the issues were framed, there is no reason to believe he should have guessed that there might be additional dissatisfaction with his student-disciplinary methods over and above and outside the charge that he had failed to follow the District's student-discipline policy.

---

9. The exact language of subsection (b) is: "(b) Hearing: Every teacher who has dismissal or suspension proceedings instituted against him shall have a hearing before the board *on the reasons for such dismissal* or suspension, unless such hearing is waived in writing by the teacher." [Emphasis supplied]

### Rapport

■ The teacher was charged with and found guilty of

"inability to establish rapport with students."

There were, however, no specific findings of fact made with respect to this charge and it is, therefore, conclusionary and thus insufficient to support an order of discharge. Furthermore, for the reasons set out above, it is necessary to exclude all testimony and evidence of any kind bearing upon a purported inability to control the conduct of the students as proof of the teacher's failure to establish rapport. Therefore, even though the order is deficient because it is unsupported by a proper finding of fact, the remaining naked question may be identified as follows:

Is a failure to establish rapport with the students, by and of itself, "good and just cause" to terminate Mr. Powell?

■ We hold that it is not "a good or just cause" as required by the statute as a matter of law.

What is rapport?

Webster's Seventh New Collegiate Dictionary defines the word as follows:

"relation marked by harmony, conformity, accord, or affinity."

At the outset, it readily appears that *"rapport"* as employed in this context connotes a mental or emotional interrelationship between teacher and student, as compared to *conduct control* which imports an affirmative disciplinary technique. Is it a prerequisite of good teaching that the instructor maintain good "rapport" with the students in all conceivable circumstances? Are judges supposed to know out of hand that the answer to this question is in the affirmative and therefore become obligated to take judicial knowledge of the fact that a teacher who does not have good *rapport* with the students should be fired?

It is not invading the facts here too deeply, in order to establish a proposition of law, to ask indulgence with the following hypothetical inquiry:

Assume there were five boys who had been made to repeat the course—they were admittedly embittered by the requirement and had vowed to disrupt the class—at any cost whatever. Assume they embarked upon such a course of conduct which resulted in the teacher having almost *no rapport* with them, even though the instructor followed the Board's prescribed disciplinary procedure to the letter.

Are we to condone the firing of the teacher for being unable to establish a rapport with these boys? We think not—it asks too much—perhaps no human could establish a "rapport" with them under such conditions.

Another question that comes to mind—is it rapport they need or is it discipline? If it was discipline—the record shows that the disciplinary procedures were presumptively followed. If it was rapport—it, perhaps, did not exist. But these assumptions and questions only emphasize the vagaries and uncertainties in which school boards and administrators, as well as lawyers, judges and contestants find themselves enmeshed when a definitive acceptable standard of professional conduct is not furnished—proven—and in the appellate process relied upon. We know of no case, nor has any been cited—where the teacher's "failure to establish rapport with his students" has been held to be sufficient ground for discharge. In the absence of such citation, we must assume none were found. *Nation v. State ex rel. Fire Fighters Local 279, I.A.F.F.*, Wyo., 518 P.2d 931.

We make one final observation concerning the "good cause" facts necessary to support the discharge of a teacher. "Good cause" cannot be just any reason that the Board deems sufficient for the discharge of the teacher. We have held in *Monahan v. Board of Trustees, etc., County of Fremont*, Wyo., 486 P.2d 235, 237:

"It becomes clear then, from what we have said, that a hearing on termination of a continuing contract teacher in-

volves the question of whether there is good cause for termination. There must not only be good cause but there must be substantial evidence before the board to show that there is good cause. Absent either, a decision on the part of the board to terminate will be arbitrary."

Not only must there be "good cause" and substantial evidence in support of the charge, but in order for the facts to sustain such a charge they must bear reasonable relationship to the teacher's fitness or capacity to perform his duties in that position. Where a teacher's discharge was the concern of the court, it was said in *Stiver v. State,* 211 Ind. 380, 1 N.E.2d 1006, 1008:

". . . 'other good and just cause' would include any cause which bears a reasonable relation to the teacher's 'fitness or capacity to discharge the duties of his position . . .' "

Where a definition of cause was under consideration in a teacher contract-termination case the court said in *Jepsen v. Board of Education,* 19 Ill.App.2d 204, 153 N.E.2d 417, 418–419:

". . . In *Murphy v. Houston,* 1928, 250 Ill.App. 385, the court defined cause to mean 'some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as good cause for his not longer occupying the place.' The rule as laid down is in harmony with Throop on Public Officers (Book III, Chapter XVI); *City of Chicago v. Condell,* 1905, 124 Ill.App. 64; *Heaney v. City of Chicago,* 1904, 117 Ill.App. 405; *Joyce v. City of Chicago,* 1905, 120 Ill.App. 398, affirmed 216 Ill. 466, 75 N.E. 184; *City of Chicago v. Gillen,* 1906, 124 Ill.App. 210; *Joyce v. Board of Education of Chicago,* 1945, 325 Ill.App. 543, 60 N.E.2d 431 . . ."

■ We find the test of good cause with respect to public officers generally to be facts which are related to the office and affect the administration thereof. *Guine v. Civil Service Commission,* 149 W.Va.

461, 141 S.E.2d 364, 368–369; 63 Am.Jur. 2d, Public Officers, § 202, Note 57, page 752.

■ Therefore, it is the decision of this court that the "good cause" to which the statute refers when the term "any other good or just cause" is used in § 21.1–160, W.S.1957, 1975 Cum.Supp., or when good cause is contemplated as discussed in Monahan, supra, these terms assume facts which bear a relationnship to the teacher's ability and fitness to teach and discharge the duties of his or her position.

For the reasons above stated, we hold that a general charge of "inability to establish rapport with his students," unsupported by definition and specific facts going straight to the charge, is insufficient, standing alone, to constitute "other good or just cause" under the statute, or the good cause which is necessary to insulate the order of termination or dismissal against capriciousness and arbitrariness. We repeat —in coming to this conclusion *we place heavy emphasis upon the fact that the Board failed to find the contestant to have been deficient in his administration of the Board's disciplinary policy and there was no specificity of the rapport charge as required by the notice statute so that the contestant could know that the rapport allegation was an additional student-discipline charge which he would be required to overcome.* In any case—and within the four corners of this record—we cannot come to a conclusion that an "inability to establish rapport with the students" is in all cases—and indeed in this case—an "other good and just cause" under the statute which provides grounds for dismissing teachers.

## THE ADMINISTRATIVE PROCEDURE ACT

We reverse for another reason.

■ The only finding of fact made by the Board is that

". . . the contestant has been unable to control the conduct of his students . . ."

*This is a conclusion and not a finding*! Findings of fact are required under the Wyoming Administrative Procedure Act. § 9–276.28, W.S.1957, 1975 Cum.Supp., provides:

" § 9–276.28. Same; final decision; notification.—A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings . . . "

We said in *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550, 555, that the Administrative Procedure Act

". . . wisely requires an agency in a contested case to include in its final decision 'findings of fact and conclusions of law separately stated.' Such requirement imposes upon an agency the duty to make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based. Unless that is done there is no rational basis for judicial review. *Colorado-Wyoming Gas Co. v. Federal Power Commission*, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235; *California Motor Transport Co. v. Public Utilities Commission*, 59 Cal.2d 270, 28 Cal.Rptr. 868, 379 P.2d 324, 326, 327; *Cities Service Gas Company v. State Corporation Commission*, 201 Kan. 223, 440 P.2d 660, 671; 2 Davis, Administrative Law Treatise, § 16.01, p. 436 (1958)."

We further said in Pan American, supra:

"To illustrate, one of the duties charged to courts, on review of agency action, is to ascertain whether or not such findings of fact are supported by substantial evidence. To afford the court an opportunity informatively and intelligently to discharge that function it must first be known what underlying evidentiary facts the agency relied upon for a finding or conclusion of ultimate facts. Findings of those basic facts will not be implied from ultimate findings. *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322, 327, rehearing denied 443 P.2d 135 . . . "

The rule of Pan American, supra, was applied in *Geraud v. Schrader,* Wyo., 531 P.2d 872, 879, cert. den., 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134, where we said:

". . . The court has examined the plans of all those submitted by the county committee and discovers that all are deficient in their findings and conclusions, in that there is a failure to abide by the direction in *Pan American Petroleum Corp. v. Wyoming Oil and Gas Conservation Comm'n*, Wyo.1968, 446 P.2d 550, 555, and repeated in *State Board of Equalization v. Kansas-Nebraska Natural Gas Co.,* Wyo.1969, 457 P.2d 963. It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know the why . . .

"It is not an obligation of a reviewing court to dig into all of the detailed information gathered in the comprehensive studies made by the county committee as well as the state committee and determine the basis for an ultimate fact. It is the duty of an administrative agency to point out in its decision how it arrived at its final facts and conclusions. There may or may not be formed, a valid syllogism."

The rule of Pan American, supra, was cited in *Monahan v. Board of Trustees, etc., County of Fremont,* Wyo., 486 P.2d 235 (1971). Finally, in *Shenefield v. Sheridan County School District No. 1,* Wyo., 544 P.2d 870, 872 (1976), Justice McClintock,

speaking for this court, addressed the question of the substitution of conclusions for findings of fact and said:

"The first finding of the Commission is that 'Mary P. Shenefield has been discriminated against * * *' by the Board. In *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550 (1968) this court expressed *strong disapproval of so-called findings which were merely statements of the ultimate facts or conclusions of the administrative agency.* Notwithstanding this clear expression, administrative agencies continue to make purported findings that in no way comply with statutory mandates and directives of this court. The finding that complainant had been discriminated against is in no way a finding of fact but represents only the conclusion of the Commission upon the merits of the case. It is therefore necessary for us to determine if *the other findings* of the Commission are sufficient to sustain this conclusion and if so, whether they are supported by substantial evidence as that term has been defined by this court." [Emphasis supplied]

In Shenefield there were "other findings of the Commission" to which the court could look to sustain the questioned conclusion. In the instant matter there are none. The only finding is that he was

"unable to control the conduct of his students . . .,"

a rank conclusion that does not even purport to contain the factual aspects required by the statute and decisions of this court.

The order of the district court is reversed for all of the reasons set out herein and the appellant Powell is reinstated in the Moorcroft school system, with all attendant rights, benefits and privileges enjoyed by him prior to receiving the letter of intention to terminate his employment.

RAPER, Justice, with whom THOMAS, Justice, joins, dissenting.

I must respectfully but seriously and emphatically dissent from the majority. I feel that they have made a superficial approach for hypertechnical reasons and are dangerously intruding upon the prerogatives of the Crook County school board and its administrators, to manage its school system.

To explain my reasons, the procedural and factual background and situation must be set out in my own way and more fully developed than has been done in the majority opinion, which has been devoted more to rhetoric than fact. The majority attempts to leave an impression that the complaints against appellant were insignificant, practically bordering on the frivolous. That was far from the case.

Powell, the appellant-teacher, was having disciplinary problems in the control of his students during the school year 1972–73, previous to the school year 1973–74, with which this case is principally concerned. An evaluation of Powell as a teacher for the 1972–73 school year, made by one of his administrator superiors, showed him to be below average in discipline and in gaining the attention and response of his pupils. It was especially noted on the Teacher Evaluation Summary that: "Discipline problems have arisen due to a lack of rapport and student interest in the course." The report was discussed with the contestant by Mr. Nebelsick, principal of the Moorcroft school, and contestant initialed it as noted. He was, however, retained and given another chance.

Following a rash of disciplinary problems in Powell's classroom shortly after commencement of the 1973–74 school year, the school principal "because of incidences [sic] which had arisen in Mr. Powell's classroom up to this date [October 17, 1973,] * * *" in writing, recommended target goals to the contestant to improve the learning situation and eliminate the

disciplinary problems. These were a series of suggestions to inspire the students by offering a type of instruction creating enthusiasm to learn and developing respect of the student for the teacher.[1]

Apparently Powell was unable or unwilling to implement the goals because there was no improvement in discipline and incidents continued unabated. The school principal attended a session of the class and talked to the assembled students himself, in an attempt to promote and create a greater respect for the contestant. A review of the evidence shows that during the 1973–74 school year 17 cases for the discipline of his students were referred by the contestant to the principal of the high school as compared to only five from all the other more than 25 teachers of the Moorcroft Public School.

Powell failed to follow school operating procedures in preventing and dealing with minor discipline problems himself. As far as he was concerned, an offending student was ejected from the class and sent for action to the principal-teacher without his initial attempt to correct without referral and getting to the basic causation. There seems little question but what the students involved violated good standards of student conduct and punishment was invoked by the assistant superintendent, through class suspensions, loss of credit and removal of privileges. In all instances, there was a showing that the offenders lacked respect for the teacher. An incident additional to the 17 itemized involved a girl student. She was found in the hall crying and trying to telephone her mother because she thought Powell had deliberately pulled a chair from under her and, as a result, hurt her back. It seems that she was in the middle of a class disturbance which Powell had moved to quiet down. While it was never clear that he did as she accused him,

---

1. The written goals delivered to the teacher were as follows:

"October 17, 1973

"Recommended Target Goals for: Mr. Tom Powell

"I. Improve planning and organizing

"A. Develop short and long-range goals

  1. Have the appropriate materials available for the student to occupy the entire class period

  2. Submit to the administration weekly a complete set of goals, objectives, procedures and techniques in the implementing of each subject instructed

"B. Provide for better motivation of students and more enthusiastic participation

  1. Add diversity to daily program in each class

  2. Students to be involved in structured, learning experiences during entire class period. The accomplishment of this goal is to be evaluated through administrative visitations

"II. Improve rapport with pupils—have better two-way communication to develop mutual understanding and respect

"A. Tighten up class management techniques

  1. Don't identify with a favorite student

  2. Don't show partiality when developing classroom rapport and discipline

"B. Use more care in the evaluation of student accomplishment

  1. Have adequate grades in gradebook to justify a student's grade for a marking period

  2. The accomplishment of this goal to be evaluated through cooperative study of student evaluation techniques and grading procedures

"III. Personal characteristics

"A. Use more discretion in behavior inside and outside school

  1. Close teacher-student contact outside of school is not educationally sound

"B. Improve being punctual to class and leave the classroom for immediate business purposes only

"IV. Parent-Community

"A. Build respect and confidence of parent and child and school

  1. Parent-teacher conferences with students who may not be progressing adequately or are discipline problems"

still the disruption and the scene that ensued pointed to indiscreet handling and a showing of anger by the contestant resulted in what could have been a minor incident becoming enlarged out of proportion to its initial seriousness.

This case has a refreshing feature brushed off by the majority. Every one of the 17 incidents, plus that of the girl student, was carefully documented as to date and detail and maintained as a school record. The school administrators should be commended in this regard. The principal and assistant were, in their lengthy testimony, able to and did explain, with understanding, Powell's inadequacies. There was no lack of evidence of the teacher's inability to maintain discipline. These were the facts presented by and the opinions of the principal-teacher and the assistant superintendent for the Moorcroft school. They both made every effort to help Powell and elevate his effectiveness.

That background is preliminary to a discussion of the major thrust of the majority opinion that the reasons for his termination were not the same as those set out in the notice to Powell that the school district superintendent was recommending a nonrenewal of his contract for the following year. It is by this device that the majority circumvents ever reaching the real reason for the contestant's discharge, i. e., his inability to maintain discipline. The majority must be saying that the teacher did not know what he was to defend against and was discharged for reasons of which he was not aware and not prepared to meet because that is the only objection that can be made with respect to notice. If that were actually the case, I would be amongst the first to join in a reversal.

While the letter notice to Powell was not the most artful, still it set out enough to let him know that he was unable to maintain discipline among his students because of an inability to develop and maintain rapport with his students.[2]

The letter to Powell, advising of his termination, specifically referred to the school district regulations at particular pages. The pertinent one was page 31. That page dealt with discipline, as follows:

"2. *Discipline*—Meaningful classroom activity and motivation of students through preparation and planning should be the rule.

Teachers should stress broad standards of conduct, not 'rules and regulations.' Students should be expected to fulfill their obligations to themselves in obtaining more than a 'minimum standards' type of education. Therefore, within a humanistic context, teachers will provide necessary guidance for continuing student self actualization. In those instances that students are continuously disruptive, the resources of the district, i. e., adminstrators, guidance counselors, etc., will be used to attempt to rehabilitate the student prior to taking action designed to remove the student from school.

"The following procedures will be followed in student discipline:

"a. The student will be informed of his unacceptable behavior by the teacher.

"b. The principal and/or counselor shall be informed of a student's unacceptable behavior.

"c. Parents will be informed of a student's unacceptable behavior.

"d. A parental conference will be arranged.

"e. If [the] behavior continues, a one day suspension.

---

2. The full list of reasons is as follows:
  "1. Neglect of duty (leaving the classroom and students unattended).
  "2. Failure to follow district policy as outlined under general regulations. (N) Page [sic] 31 and 32.

"3. The inability to establish rapport with students.
.  "4. Insubordination."

"f. If the behavior continues, a three day suspension.

"g. If the behavior continues, a 10 day suspension as outlined in the Wyoming Code.

"h. Referral to the superintendent." There was never any question raised that Powell was not aware of this general regulation. Even without the abundant other notice he had, this alone should have caused him to know and be fully aware that his classroom discipline was going to be the subject matter of the hearing and the grounds for his dismissal.

Prior to the hearing, the appellant asked for copies of everything in the school files pertaining to his problem. Those were furnished and they included all the exhibits in the case which deal with the disciplinary incidents—all 18 of them—which Powell then had in all their detail. A discussion of those particular exhibits makes up the major portion of the testimony. The defendant's testimony embraces each one of the 17 incidents plus the one with the girl. He presented other witnesses who dealt specifically with the question of his classroom discipline.

There is not the slightest suggestion anywhere in the record that Powell was ignorant of what he was required to defend against. Section 9-276.25, W.S.1957, as amended, a part of the Wyoming Administrative Procedure Act, subsection (b)(4), provides, with respect to notice, that it will contain,

"A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, *and thereafter upon application a more definite and detailed statement shall be furnished.*" (Emphasis added.)

The appellant never made any application for any more detailed statement than was given to him. As a matter of fact, the parties prior to the hearing entered into a written stipulation, the opening words of which were, "The Contestant waives service of a *formal* Notice of Hearing * * *." (Emphasis added.) He well knew what the hearing was all about.

In *Glenn v. Board of County Commissioners, Sheridan County*, Wyo.1968, 440 P.2d 1, 4, this court recognized that the courts have always been quite liberal with respect to the matter of pleadings before administrative agencies and observed that: *"The important question is whether or not the parties 'had fair notice of the issues involved."* Glenn also notes that since neither party there raised any question of notice before or during the hearing, and not until on appeal, it would turn to the merits without considering any question of insufficient notice.

1 Davis, Administrative Law Treatise, § 8.04, p. 523, drives that home dramatically, when he says:

"The most important characteristic of pleadings in the administrative process is their unimportance. And experience shows that unimportance of pleadings is a virtue. In the judicial system the long-term movement has been from the common-law system of pleading to formulate issues, to the early code ideal of stating all material facts, to the view now prevailing in the federal courts that fair notice is the objective. Of pleading in the courts, Profession [sic] Moore says in his treatise: 'The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved. . . . A generalized summary of the case that affords fair notice is all that can be expected.' A court has observed: 'The whole thrust of modern pleading is towards fulfillment of a notice-giving function and away from the rigid formalism of the common law. It is now generally accepted that there may be no subsequent challenge of issues actually litigated, if there has been actual notices and adequate opportunity to cure surprise.' "

What is said by Davis is reflected in our own Rule 15(b), W.R.C.P., providing:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment."

No more should be or is by competent authority required of an administrative agency.

The hearing before the Crook County school board was tried entirely upon the experience of the Moorcroft school principal and the assistant superintendent with Powell's complete failure to maintain discipline in his classes because he had no rapport with his students. Not objection one was made on the ground that he was surprised and he made no motion for a continuance in order to meet some evidence he did not expect. He came prepared to try the very issues litigated. 1 Davis, goes on to say at page 525:

"The key to pleading in the administrative process is nothing more than opportunity to prepare. Pleading is only one of many ways of providing opportunity to prepare. Deficiencies in a pleading may be cured by informal communication, by formal amendment, by a bill of particulars, by pre-hearing conferences, or by ample continuances at the hearing. And the question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure, * * *."

In *Jergeson v. Board of Trustees of School District No. 7, Sheridan County,* Wyo.1970, 476 P.2d 481, where complaint was made by the teacher that the board had failed to give him notice of all the charges against him, this court approved a general charge as opening up a range of incidents in which the teacher was involved and pointed out that the discovery procedure provided in the Wyoming Rules of Civil Procedure [3] was available to him. Here, Powell used pre-hearing discovery and obtained every bit of information in the school file which was the entire case against him. He well knew the complaints against him. In *Fahl v. School District No. 1 in City and County of Denver,* 1947, 116 Colo. 277, 180 P.2d 532, an opportunity to inspect the records of the board supplied the additional particulars and the teacher was not prejudiced for want of additional specifications.

The attorney, employed to litigate the matter of the teacher's inadequacy on be-

---

3. Section 9-276.25(g), W.S.1957, 1975 Cum. Supp., of the Administrative Procedure Act, provides as follows:

"(i) In all contested cases the taking of depositions and discovery shall be available to the parties in accordance with the provisions of Rules 26, 28 through 37 (excepting Rule 37(b)(1) and 37(b)(2)(D) therefrom) of the Wyoming Rules of Civil Procedure in effect on the date of the enactment of this act [§§ 9-276.19 to 9-276.33] and any subsequent rule amendments thereto. Provided, however, all references therein to the 'court' shall be deemed to refer to the appropriate 'agency'; all references to the use of the subpoena power shall be deemed references to section 7(c) [§ 9-276.25(c)]; all references to 'trial' shall be deemed references to 'hearing,' all references to 'plaintiff' shall be deemed references to 'a party.'"

half of the school district, made an opening statement in which he outlined all the evidence that would be introduced to include all of the incidents of Powell's inability to control his students. Counsel for Powell made no objection or showed any surprise at the course the evidence would take. The superintendent of schools testified that the reason he would not recommend rehiring of Powell and the basis for his letter to Powell to be "lack of rapport, lack of discipline." Contestant made no objection that they were outside the reasons being tried. An examination of the record will disclose that at no time did the appellant ever make objection to the introduction of any evidence on the ground that it was something new and surprising to him that he did not expect nor did he ever object upon the ground that the evidence was not within the notice which he received. His own testimony was designed to defend against every one of the multitude of incidents.

This is an objection that was first raised in the district court on appeal and now in this court. We must remember that this was not a court proceeding but was a hearing before an agency and it seems to me clear that under the rules that we cite so many times, if no objection is made at the trial level, it is too late to do so at the appellate level, unless it is something of a fundamental nature.[4] I realize that notice is a matter of seriousness, but the appellant would have to have been unconscious to not know what the hearing would encompass and there is no indication that he suffered such disability.

As said in *United States v. L. A. Tucker Truck Lines, Inc.*, 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54, 58:

" * * * Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."

Our own rule, 72.1(i), W.R.C.P., dealing with administrative appeals, declares as follows:

"The review shall be conducted by the court without a jury and shall be confined to the record as supplemented pursuant to the provisions of subdivision (h) of this rule, *and to the issues raised before the agency.* The court's review shall be limited to a determination of the matters specified in section 14(c) of the Wyoming Administrative Procedure Act. The court may receive written briefs and may in its discretion hear oral argument.

\* \* \* "

(Emphasis added.)

It would be unusual for us to make new rules as we go along from case to case, to suit our fancy. See *Glenn v. Board of County Commissioners, Sheridan County*, supra.

By the majority's failure to follow these established doctrines, they have improperly deleted from their consideration Powell's inability and failure to maintain discipline in his classes. They are left talking about only rapport, which is nothing more than a reason for the lack of discipline. Failure to establish rapport is not and cannot be left standing by itself but remains associated with absence of discipline, as one of the latter's basic causes. Rapport and discipline cannot be separated but must be considered together.

The next step then is to determine the adequacy of the board's findings of fact, conclusions of law and order. They are required by § 9–276.28, W.S.1957, 1975 Cum.Supp.:

" * * * The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts sup-

---

4. *Oedekoven v. Oedekoven*, Wyo.1975, 538 P.2d 1292, 1295.

porting the findings. Parties shall be notified either personally or by mail of any decision or order. A copy of the decision and order shall be delivered or mailed forthwith to each party or to his attorney of record."

The board in its order terminating the contestant set out as a separately stated fact:

"2. That the Contestant has been unable to control the conduct of his students as evidenced by the unusual amount of disciplinary problems that have developed in his classroom during the 1973–1974 school year, which in turn has caused a great amount of dissention [sic] between the Administration and the Contestant."

The board then by its order set out the following as separately stated conclusions of law:

\* \* \*

"2. That the Contestant failed to establish rapport with his students during the 1973–1974 school year.

"3. That the Contestants [sic] continued employment will cause irreparable damage to the orderly administration of Crook County School District No. 1.

"4. That it is for the best interests of Crook County School District No. 1 that the Contestant's employment with the District be terminated at the conclusion of the 1973–1974 school year.

"5. That the Administration has shown good cause why the Contestant's employ-

ment with the district should be terminated."

It is conceded that "2." of the conclusions of law is a finding of fact. That misarrangement of a fact is of minor consequence and only a matter of form. (I do not recommend it as good form.) The only statutory words appearing in the board's order are "good cause." The remainder of the order concisely and explicitly explains the good cause for termination. The words "good cause" come from § 21.1–160, W.S.1957, 1975 Cum.Supp., Laws, 1969, Ch. 111, § 160, which provides that, "The [school] board may suspend or dismiss any teacher for incompetency, neglect of duty, immorality, insubordination, or any other *good or just cause.*" (Emphasis added.)

There is no precise formula as to the extent to which underlying facts must be set out. The ultimate fact is usually stated in the words of the pertinent statute. Underlying facts are basic forms from which the ultimate facts in the terms of statutory criteria are inferred. They represent the meaning of the evidence as viewed by the agency. The agency need not recite the evidence in detail.[5] *Saginaw Broadcasting Co. v. Federal Communications Commission,* 1938, 68 App.D.C. 282, 96 F.2d 554, 559–561, cert. den. *Gross v. Saginaw Broadcasting Co.,* 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; 2 Davis, Administrative Law

---

5. Appellee school district in its brief very effectively illustrates this by setting out that the school board *could* have made the following findings of fact:

"that Contestant was rated 'below average' in disciplinary ability during the 1972–1973 school year, and was at that time identified as having 'disciplinary problems' (R.A. 254, 424); that there were seventeen disciplinary incidents involving Contestant during the 1973–1974 school year (R.A. 86–87); that the Administration considered this number to be high in relation to teachers in the same school and other schools in the district (R.A. 86–87, 173, 177, 188, 255); that the Principal believed that Contestant was not handling minor discipline problems satisfactorily (R.A. 127–129);

that the Administration took measures to improve the situation, but did not detect any improvement (R.A. 178, 182); that the Superintendent, the Assistant Superintendent, the Principal, and the Counselor all considered the reason for the problems to be that Contestant had failed to gain the respect of his students, or equivalently, had failed to establish rapport with them (R.A. 86–87, 91, 150, 165, 173, 255, 257, 286–287); and that the Assistant Superintendent and the Principal had recommended that Contestant be terminated (R.A. 91, 182)."

However, these "findings" are merely a recitation of the evidence and say no more than the concise and explicit findings set out by the board.

Treatise, § 16.06, p. 450.[6] The board has explained why Powell should be terminated, as it views the evidence. The entire evidence was taken up with the inability of Powell *to maintain discipline among his students* which the school superintendent stated was caused by a lack of rapport. The principal's testimony devoted pages to lack of rapport, as did that of the assistant principal. The remaining testimony concerned the details of the heavy volume of disciplinary incidents. Boiled down, these were the major, if not the only, reasons for the existence of "good cause" for the contestant's termination. The only other reason I can find in the record is in the testimony of the psychological technician of the Moorcroft school that Powell's students had no respect for the contestant. But that is probably related to his lack of rapport with his students. The presence of those two reasons are enough to send us to the record to see if they are supported by substantial evidence. They were concise and explicit.

Admittedly, it would have been insufficient for the school board to merely cite the words "good cause" as its reason for terminating. It is the duty of the administrative agency to point out in its decision how it arrived at its final facts and conclusions and a statement only of statutory language is not enough. *Geraud v. Schrader*, Wyo.1975, 531 P.2d 872, 879, cert. den. 423 U.S. 904, 96 S.Ct. 205, 46 L. Ed.2d 134. In *Geraud*, only statutory language was used. The school board, however, went further and premised that conclusion on the subfindings that Powell was (1) unable to control the conduct of his students which was caused by the further fact that (2) the contestant failed to estab-

lish rapport with his students, leading to (3) a great amount of dissension between the administration and the contestant, all of which persuaded the board that it was in the best interests of Crook County School District No. 1 that Powell's employment should be terminated at the conclusion of the 1973–1974 school year. Put into a logical sequence, a syllogism is formed:

*Premises*: (1) Contestant had no rapport with his students; (2) Contestant was unable to control the conduct of his students as evidenced by the unusual amount of disciplinary problems that developed in his classroom in the 1973–1974 school year. [There was a lack of discipline in contestant's classes.]; (3) There was dissension between the administration and the contestant as a result of contestant's continued problem of discipline; and (4) The best interests of the school district are not served when such conditions prevail.

*Conclusion*: There is good cause to terminate the contestant.

While the board's order is not in either of the foregoing forms of paraphrasing, it nevertheless gives clear and sufficient reasons, if supported by sufficient evidence appearing in the record, why the board terminated the appellant.

It would be my view that if the board made any error, it would have been failure to find specifically that this teacher was incompetent rather than using the more general term "good cause." No one can argue, however, that incompetency is not good cause. Good cause includes any ground which is advanced in good faith

---

6. " * * * An ultimate fact is usually expressed in the language of a statutory standard. Examples: the rate is reasonable; * * * the action is in the public interest; * * *. Facts might theoretically be lined up on a scale from the most specific to the most general. At one end is each statement of each witness, then a summary of the testimony of each witness, then a summary of the testimony and other evidence on each side, then the basic findings, and at the opposite end the ultimate findings. Courts do not want agencies to include detailed summaries of testimony in their findings; they want what they call the basic facts. The ultimate finding may be and usually is mixed with ideas of law or policy. The Supreme Court has said: 'The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.' "

and is not arbitrary, irrational, unreasonable or irrelevant to a school board's task of building up and maintaining an efficient school system. *Davis v. School Committee of Somerville,* 1940, 307 Mass. 354, 362, 30 N.E.2d 401, 406. If the cause assigned is at least fairly debatable and asserted honestly and not as subterfuge, that is enough. *Rinaldo v. Dreyer,* 1936, 294 Mass. 167, 169, 1 N.E.2d 37, 38. I have no objection to the definitions of good cause set out in the majority opinion because the cause for firing Powell falls well within them. There is really no appreciable difference in the definitions. The board was not obligated to accept the excuses advanced by the contestant for the breakdown of discipline in his classes. Powell's position was that students were using brushfire tactics and guerilla warfare on him. It is believable that poor teacher practices result in poor discipline.

Is failure to maintain discipline good cause for removal of a teacher? This is the critical issue that the majority bypasses. It is noted by the author of an Annotation, "What Constitutes 'Incompetency' or 'Inefficiency' as a Ground for Dismissal or Demotion of Public School Teacher," 4 A.L.R.3d 1090, 1102, that the inability to maintain discipline is one of the most common characteristics of those teachers who have been held to be incompetent. The cases bear out this conclusion. *Robel v. Highline Public Schools, District No. 401, King County,* 1965, 65 Wash.2d 477, 398 P.2d 1; *Guthrie v. Board of Education of Jefferson County,* Ky.1957, 298 S.W.2d 691; *Singleton v. Iberville Parish School Board,* La.App.1961, 136 So.2d 809; *Fox v. San Francisco Unified School District,* 1952, 111 Cal.App.2d 885, 245 P.2d 603; *Schrader v. Cameron Tp. School District, Cameron No. 6, Audubon County,* 1936, 221 Iowa 799, 266 N.W. 473; *Biggs v. School City of Mt. Vernon,* 1909, 45 Ind.App. 572, 90 N.E. 105; *In re Lane,* 1940, 141 Pa.Super. 259, 14 A.2d 573. In *Board of Education of City of Albuquerque v. New Mexico State Board of Education,* 1975, 88 N.

M. 10, 536 P.2d 274, it was held that it is basically a decision of policy to be determined by the agency as to whether a teacher unable to control his classes should be terminated. A board of education has a right to demand that a teacher be capable of arousing and holding the interest of his pupils and maintaining discipline. *Conley v. Board of Education of City of New Britain,* 1956, 143 Conn. 488, 123 A.2d 747.

Was the matter of Powell's inadequacy supported by the record and the evidence substantial? What is substantial evidence? In *Howard v. Lindmier,* 1950, 67 Wyo. 78, 87, 214 P.2d 737, 740, it was said with approval that substantial evidence "does not include the idea of weight of evidence, although it is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Before the board can be overruled, the court must have evidence before it that the conclusion of the board was wrong and unreasonable. The weight of credibility given witnesses by an administrative agency should not be lightly disregarded on an appeal from the agency's decision. *L. L. Sheep Co. v. Potter,* 1950, 67 Wyo. 348, 359, 224 P.2d 496, 499.

The majority turn their backs on the controlling and convincing testimony of experienced school administrators and teachers. The testimony of experienced teachers and administrators is of significant importance. Those testifying before the board spoke with reason. Information as to the art of teaching can be imparted by one who is versed and aware of required qualifications. Who were those witnesses in this case with an understanding of the educational process? Hugo Hendrickson, superintendent of schools, Crook County, School District No. 1; he has a master's degree in teaching and a master's degree in education and has done postgraduate work at the University of California, the University of Duluth, Minnesota, and the University of Wyoming. He has studied and is experienced especial-

ly in the field of evaluating the performance of teachers. He attributed weight to the extremely high frequency of disciplinary incidents and considered it a result of the teacher's failure to maintain rapport with his students and a failure to follow the steps in handling disciplinary problems set out in the district regulations (see pages 1123 and 1124).

Another witness was Richard Haglund, teacher-principal at Moorcroft high school, with a teaching background of 10 years in the Moorcroft high school, five years as head teacher and the past three years teaching principal. His duties are not only teaching but the supervision and evaluation of teachers as well as handling discipline problems. He has a master's degree in educational administration from the University of Wyoming, which includes a study of teacher evaluation. He has had special instruction in professional skills of the instructor, classroom management and teaching techniques and skills. He testified that, "Classroom management would involve the development of general rapport with students, developing a program whereby you can communicate with the students, work with students and present a good learning situation. With good rapport you generally will not have many disciplinary problems." He testified as to each of the large number of disciplinary incidents. He considered the lack of discipline as symptomatic of lack of rapport; there was a lack of understanding between the pupils and teacher. It is expected that teachers develop a good learning climate and Powell there failed.

Earl Nebelsick testified. He is assistant superintendent at the Moorcroft school, responsible for the general supervision of that institution. He has a master's degree in the field of educational administration from South Dakota State University as well as some 30 hours of additional work in the area of education. He has been a teacher since 1960. His testimony was that the contestant had been unable to es-

tablish a teaching-learning situation, to gain the respect of his students.

Kelly Birchfield, psychological technician for the Moorcroft schools, testified. He has a master's degree in education with a speciality in educational psychology work with emphasis on guidance and counseling. During the course of his work, he had occasion to talk with students with discipline problems. It is his work to pinpoint why the behavior is taking place. His conclusion was a lack of respect for Powell by the students and, consequently, he had an undue amount of discipline problems within his classroom.

As said in *Barger v. Board of Trustees of School District No. 3, Goshen County*, Wyo.1972, 494 P.2d 544, 546, there is "no reason why a school board cannot and should not rely upon evaluations made by administrators, who are hired for purposes such as evaluating the work of teachers and administering school systems in general." We cannot disregard the skills of those witnesses testifying from experience and special education in their fields and scorn their testimony as nonsense.

The majority pooh-poohs the term "rapport" as a basic fact contributing to or being a part of good cause for termination. "Rapport," according to Webster, is a relation characterized by harmony, conformity, accord or affinity. Those skilled and experienced in the profession of teaching testified that this relation did not exist between Powell and his students and it is of basic importance. I believe it reasonable that when this does not exist, the teacher is ineffective, leading to the disrespect the evidence indicates did exist, expanding into class disruptions and a breakdown in discipline. A teacher thus loses his primary purpose. Teaching and learning is disrupted; concentration is upset; disorder prevails; and the subject of instruction is lost in the commotion. He is not doing that for which he was hired in the efficient manner expected. There is no excuse for overlooking ineffective teachers and it is

the duty of school administrators to eliminate from teacher ranks those who do not perform the important mission of education. The teaching profession itself must prefer that the ineffective be removed from its ranks. Schools can be no better than their teachers.

Rapport has meaning to educators and is a part of their jargon. If this term had meaning to the participants, and the record shows it did, there is no justification for insisting that it was inadequate because it was not understood by lawyers or judges in the same way.

Courts must not administer the Crook County school system. Courts must not substitute their judgment in educational matters for those of school boards and administrators. This court has consistently recognized the importance of administrative boards and their decisions. It has adhered to the rule that we will not substitute our judgment for theirs. *Shenefield v. Sheridan County School District No. 1*, Wyo.1976, 544 P.2d 870, 874, and the cases there collected. The majority piously reaffirms that canon, worships at its shrine and then sins in its shadow.

The board of trustees shall be the governing body of the school district. Section 21.1–21, W.S.1957, 1975 Cum.Supp. (same as in 1973). It shall prescribe and enforce rules, regulations and policies. Section 21.1–26(a), W.S.1957, 1975 Cum.Supp. (same as in 1973). It is empowered to discharge employees. Section 21.1–27(g), W.S.1957, 1975 Cum.Supp. (same as in 1973). Thus, the statutory duty rests in the school board, not the courts. They are better qualified than courts. We have enough judicial duties to dispatch without undertaking to run a school system, as well. It was recognized in *Baird v. School District No. 25, Fremont County*, 1930, 41 Wyo. 451, 463, 287 P. 308, 311, that someone must judge whether a school is operating in a proper fashion. Discretion to do that must be reposed somewhere and the trustees and school administrators have special knowledge of schools and school problems.

Courts will not interfere with the discretion of elected school officials in matters which have been assigned to their judgment unless there is an abuse of discretion or arbitrary or unlawful action. It is up to the governing board to say what is best for successful management and not for the courts to interfere. It is on the ground and can see the effect an unproductive teacher has on its whole system. There must be a chain of authority—there must be the right to manage and control subordinates, otherwise there is no use in designating certain personnel as superintendents, principals and teachers. The most important function of the school board is to assure a first-rate instructor staff. That is what schools are all about.

The views of this court in *Baird* are consistent with the limitations placed upon our scope of review by § 9–276.32(c), W.S.1957, 1975 Cum.Supp., Laws, 1973, Ch. 24, § 1, of the Wyoming Administrative Procedure Act, enacted after the date of that case:

"The court's review pursuant to the provisions of this section shall be limited to a determination that:

"(i) The agency acted without or in excess of its powers;

"(ii) The decision or other agency action was procured by fraud;

"(iii) The decision or other agency action is in conformity with law;

"(iv) The findings of facts in issue in a contested case are supported by substantial evidence; and

"(v) The decision or other agency action is arbitrary, capricious or characterized by abuse of discretion."

The agency had the power; there is no question of fraud; it followed the law; there is no arbitrariness; the board was not capricious and it acted within the limits of its discretion.

Consistent failure of a teacher to maintain discipline in the classroom is good cause for termination. Unfitness for a task is best shown by numerous or a series

of incidents. There is a sound, reasonable basis for the board's action in terminating the contestant. I can find no justification within the statutorily authorized scope of our review to alter the decision of the board of trustees or the district court.

I would have affirmed the board of trustees and the district court.