Mary P. SHENEFIELD, Appellant (Complainant below),

v.

SHERIDAN COUNTY SCHOOL DISTRICT NO. I, Appellee (Respondent below).

No. 4443.

Supreme Court of Wyoming.

Jan. 12, 1976.

---

Donald L. Painter, Casper, for appellant.

Rex O. Arney and Tom C. Toner, Redle, Yonkee & Arney, Sheridan, for appellee.

David B. Kennedy, Atty. Gen., and H. J. Arnieri, Asst. Atty. Gen., Cheyenne, for Fair Employment Commission, amicus curiae.

Before GUTHRIE, C. J., and McCLINTOCK and THOMAS, JJ.

McCLINTOCK, Justice.

Mary P. Shenefield,[1] disappointed applicant for a teaching position with the Sheridan County School District No. 1, appeals from the decision of the district court of Sheridan County reversing the order of the

1. Hereinafter referred to as complainant. The Board of Trustees of School District No. 1 of Sheridan County will be referred to as the Board, and the Wyoming Fair Employment Commission will be referred to as the Commission.

Wyoming Fair Employment Commission. The Commission, after holding hearing upon the complaint of Mrs. Shenefield that she had been discriminated against in the award of the teaching position, entered its decision and order containing findings that the complainant had been discriminated against and had sustained damages as the direct result of this discrimination. The Board was therefore ordered to cease its discrimination against Mrs. Shenefield and to cease and desist from any and all discriminatory practices designed to deny employment because of any person's sex. $1,832, representing difference in salary between the position sought and one later obtained in another district, moving and living expenses, and attorney fees, was also "awarded to the complainant."

The matter was presented to the district court upon the record which had been made before the Commission. That court reviewed the transcript, listened to argument of counsel, and considered briefs which had been submitted in behalf of the contesting parties. A memorandum opinion was thereafter issued concluding that the Commission's actions were not supported by substantial evidence of discrimination because of sex and that the decision should be reversed. Order was thereupon entered reversing the Commission's decision in all respects and this appeal followed. We find no error in the action of the district court and affirm.

■ The first finding of the Commission is that "Mary P. Shenefield has been discriminated against * * *" by the Board. In *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission,* Wyo., 446 P.2d 550 (1968) this court expressed strong disapproval of so-called findings which were merely statements of the ultimate facts or conclusions of the administrative agency. Notwithstanding this clear expression, ad-ministrative agencies continue to make purported findings that in no way comply with statutory mandates and directives of this court. The finding that complainant had been discriminated against is in no way a finding of fact but represents only the conclusion of the Commission upon the merits of the case. It is therefore necessary for us to determine if the other findings of the Commission are sufficient to sustain this conclusion and if so, whether they are supported by substantial evidence [2] as that term has been defined by this court.

In addition to this objectionable finding of discrimination the Commission found in pertinent part that complainant is a female holding degrees of A.A. from Western College for Women, B.S. (in education) from Bowling Green University, and M.A. from Carnegie Institute; that she had been certified by the Wyoming State Board of Education as being qualified to teach English and Speech; that she applied for a position with the district in April of 1972, and at that time discussed the position with the principal of the high school maintained by the district; that the principal at that time indicated his preference to fill the position with a man; that he had described the duties as teaching English and Speech, with some possible additional Drama duties in grades nine through twelve; that the position had been advertised through the University of Wyoming Placement Service as one involving secondary English; that complainant again contacted the principal of the school on May 23, 1972 and was again advised that he preferred a man for the position, giving as the reason therefor that there were very few men on the high school faculty at that time; that on May 31, 1972 she called the superintendent of the district and was advised that the position had been filled by the appointment of a Mr. Albert Scherry, a male applicant

2. *Monahan v. Board of Trustees,* Wyo., 486 P.2d 235, 237 (1971) ; *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission,* Wyo., 446 P.2d 550, 555 (1968).

who had been a student teacher at the school during the previous school year.

The Commission also found that the school district "gave testimony"[3] that complainant was not hired[4] because she could not coach intramural or interschool sports, because she would have had to commute from Buffalo, and because she required a higher salary because of her qualifications, but that the additional requirement of coaching was added between the time of advertisement for the position and the time that the district hired Mr. Scherry. It is also found that at no time was there any discussion between complainant and the superintendent or the Board concerning her commuting from Buffalo, her prior experience in other school systems, coaching sports, or the higher salary required.

The Commission found that the position for which complainant applied carried an annual salary of $9,310. The Commission did not find, but the evidence clearly shows, that this was the established base salary for a person of the complainant's education and experience and had she been hired it would have been incumbent upon the Board to pay that salary plus any additional compensation that might have been required for additional duties. It also shows that the man who was hired, a newly graduated teacher with only a B.S. degree, had been a student teacher in the Big Horn school district the year before his employment, had been well liked as a student teacher, was highly recommended by his two supervising teachers, had directed a play, and had assisted in coaching the basketball team. Furthermore, since he did not possess the degrees and experience of the complainant he could be properly employed and was employed at a base annual salary of $6,650.[5]

Although not specially noted or discussed in the Commission's findings, the high school principal, with whom the complainant had talked and who had a responsible say in the recommendations to the Board, testified that he had received some 20 applications for the position, about 60% of them from women, that the district would have had to pay Mrs. Shenefield $9,310, and that in her application she indicated that she would want a salary of $10,250. He testified that he had not discriminated against complainant because of her sex, but had considered the following factors: (1) she lived in Buffalo and would have had to commute to Big Horn; (2) she had held several positions and he felt that she probably followed her husband when he changed jobs; (3) she expected to receive a salary of $10,250 and if hired would have required a starting salary of at least $9,310; (4) she was incapable of performing coaching duties and teachers were needed for that purpose; (5) he found complainant to be a "pushy demanding type of person." With respect to Scherry, he said he was hired because of "my knowledge of having had him as a student teacher in our system, the knowledge of knowing the kind of job he would do, and how his personality would fit the total system, and how he would get along with other teachers."

▮ Appellant strongly urges upon this court the proposition that the district

3. The expression is strange, but since the Commission recites no evidence or testimony to the contrary we conclude that it accepted the testimony as true. We have examined the record and find no such contrary evidence.

4. While there are no findings on the matter the record shows that the practice of the school district is for the high school principal to do the original interviewing and screening of applicants for high school positions. He then discusses the matter with the district superintendent and his recommendation, if the superintendent approves, is submitted to the Board. No extensive investigation or screening is conducted by the Board although on occasions one or more trustees may meet with an applicant. In this case the Board accepted the recommendation of the principal, discussed with and approved by the superintendent, to hire Mr. Scherry.

5. This base salary was actually increased by $680, representing $200 additional compensation for acting as director of plays and annual paper, plus $480 for coaching duties.

court has itself examined the evidence and redecided the case without regard to the decision of the Commission and in excess of the limits upon judicial review of administrative action imposed by the Administrative Procedure Act (§ 9–276.19 et seq., W.S.1957, 1975 Cum.Supp.).[6] This court has consistently recognized the importance of administrative boards and their decisions. It has adhered to the rule that our courts will not substitute their judgment for that of the particular board or commission. *Sweetwater County Planning Committee v. Hinkle,* Wyo., 493 P.2d 1050, 1052 (1972) (review of action of County Planning Committee for Organization of School Districts); *Gore v. John,* 61 Wyo. 246, 276, 157 P.2d 552, 562 (1945) (review of action of the Public Service Commission); *Rayburne v. Queen,* 78 Wyo. 359, 370, 326 P.2d 1108, 1111 (1958); *Howard v. Lindmier,* 67 Wyo. 78, 86, 214 P.2d 737, 739 (1949) (action of Board of Land Commissioners); and *J. Ray McDermott & Co. Inc. v. Hudson,* Wyo., 348 P.2d 73, 75 (1960) (action of State Board of Equalization). This has given rise to the proposition, established even before adoption of the Administrative Procedure Act that the administrative decision is to be reversed only for errors of law, including the lack of substantial evidence to support it. In *Lindmier,* 214 P.2d at 740, this is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

It has been said to be established law that a school board "has the absolute right to decline to employ or re-employ any applicant for any reason whatever or for no reason at all." *Johnson v. Wert,* 225 Ark. 91, 279 S.W.2d 274, 276 (1955). But this court in *Monahan v. Board of Trustees,* Wyo., 486 P.2d 235, 236 (1971) said:

"Our past history has been such that it is difficult for some of us to accept legislation which, in school affairs, eliminates the principle that a school board as employer can hire and discharge teachers as it sees fit.",

went on to hold the Wyoming Teacher Employment Law (§ 21.1–151 et seq., W. S.1957, 1975 Cum.Supp.) applicable and then applied the substantial evidence rule to the action of a school board terminating a teacher's employment. The Fair Employment Practices Act (§ 27–257 et seq., W.S.1957) imposes additional strictures upon the right of the school board to pick and choose as it may prefer but we observe that just as in *Lindmier* this court said that it was the function of the land board and not of the courts to award leases covering state lands, so in the present situation it is the function of the school board and not of any reviewing authority, whether it be a fair employment commission or the courts, to award teaching positions. That commission sits only to determine if there has been a denial of a position to an applicant, otherwise qualified, because of his or her sex, race, creed, color, national origin, or ancestry, § 27–261, W.S.1957, C. 1967. It does not sit to determine which of two—or 20—applicants is best qualified to fit the special demands of the school district.

 From this it follows that while neither this court nor the district court, in examining the action of the Commission, should make an independent judgment on the facts presented to the Commission, similarly the Commission was not empowered to exercise an independent judgment as to

---

6. Appellant in her brief claims that the action of the trial court is not in compliance with provisions of the Wyoming Administrative Procedure Act, citing particularly §§ 9–276.25 (h), and 9–276.32(c), W.S.1957, 1975 Cum. Supp. Neither she nor the Board refer to § 27–262, W.S.1957, C.1967 (requiring the Commission to make findings of fact) and § 27–263, W.S.1957, C.1967 (providing for court review of its decision on question whether it is supported by "substantial evidence in view of the entire record as submitted"). We think it unimportant to discuss minor differences in the review provisions of the two acts except to point out that under § 27–263 either the complainant or respondent may seek such review.

the merits and qualifications of the applicants. We are convinced that the Commission had before it no substantial evidence indicating discrimination against complainant because of her sex and that the decision made by the Board to hire the male teacher was within its discretionary power to determine the qualifications of prospective teachers in light of its own special problems.

We think that complainant's error and that of the Commission lie in the assumption that in reaching a determination as to which of two (in this case 20) applicants shall receive a particular position, the Board must line up all the applicants, place their degrees, teaching experience, and amount of expertise in some sort of order and mechanically pick the one that has the highest degree, the greatest amount of experience, and the most on-paper expertise. But the qualities that go to make a good teacher, fitting the peculiar requirements of a small school system, do not permit computerization. Both are also in error in their assumption that when a school board advertises for teachers it must at the risk of losing all freedom of choice in the selection of a teacher, set forth all the specifications for the position that the board can possibly think of, that is, the Board should have advertised for a person to teach English at the secondary level who would be willing and under applicable salary schedules could work for $6,650 a year, would live in Big Horn, would expect to continue in the position for some indefinite time, could perform coaching duties, and who possessed a certain described personality. We do not think the Board in this case was so bound.

What makes the ideal teacher is a question that has never been answered but we cannot think that the legislature in passing the anti-sex discrimination law of this state expected a school board, in advance of any notification of job opening and without appraisal of the individual applicants for the position, to lay out specifications for teachers as it would establish specifications for a building upon which it was inviting firm lump sum bids. We think that notwithstanding the proscription of sex or other discrimination the statute still permits the Board, with the assistance of its administrative staff, and at the time the position is awarded or selection made, to consider all applications from all pertinent angles and arrive at a decision as to which applicant will best fill the needs of the district. If it turns out that for reasons of economy one applicant can fulfill the needs of the district at a cost substantially less than another applicant, even though the rejected applicant may on paper possess the greater qualifications, a selection of the less expensive teacher cannot be said by any board or court to have been the result of discrimination on the basis of sex. Nor can the selection of one more able to assist in the conduct of the school's athletic programs be considered such discrimination. If personal attractiveness as established by recommendations of teachers or others acquainted with the applicant may not be considered by the Board its effective exercise of any discretion in the selection of teachers is indeed abrogated.

We therefore affirm the reversal of the Commission's decision, not as indicating any judgment of our own as to the respective merits of the applicants, but on the basis that there was not before the Commission substantial evidence that there was discrimination against the complainant because of her sex. Stated another way, the decision of the Board to select the teacher it did was supported by substantial evidence and reasonably arrived at without sex discrimination.

The judgment is affirmed.