Edward M. ATCHISON, Appellant
(Petitioner),

v.

The CAREER SERVICE COUNCIL OF
the STATE OF WYOMING, Appellee
(Respondent).

No. 5714.

Supreme Court of Wyoming.

May 17, 1983.

Bert T. Ahlstrom, Jr., Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., and Bruce A. Salzburg, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, THOMAS, ROSE* and BROWN, JJ., and HANSCUM, District Judge.

HANSCUM, District Judge.

Appellant Edward M. Atchison was a probationary employee of the Department of Health and Social Services (Department). The Department advised appellant that he would have to vacate his position. After he did so, he filed an appeal with appellee Career Service Council (CSC). CSC ruled that appellant's appeal should be dismissed on several grounds, one of which was that appellant had no right to an appeal. The appellant filed a petition for review from this first ruling to the district court, which reversed the CSC and remanded the case for hearing. No party appealed from this district court order. After the hearing, CSC issued an order affirming the Department's action. Appellant again petitioned for review in the district court, which affirmed CSC's order. Appellant is now appealing from the district court order affirming CSC's decision to uphold appellant's separation and dismissal by the Department.

Appellant contends that CSC erred when it upheld the Department's actions, and that the district court erred when it affirmed CSC, in that there was no substantial evidence to support CSC's actions. Specifically, he argues that: (1) CSC erred in finding that the minimum qualifications which were developed for the position of developmental disabilities state program supervisor were lawful; (2) CSC erred in finding that appellant did not qualify for the position; (3) CSC erred in finding that there was an offer of a lateral transfer under applicable personnel rules; and (4) CSC erred in finding that appellant's termination was a nullity.

We affirm.

## FACTS OF THE CASE

Edward M. Atchison was employed on November 1, 1977, as a developmental disabilities state program consultant by the Department. At the time appellant interviewed for the consultant position, he was advised that the consultant position would be restructured into two positions to make one position (i.e., the position responsible for adult programs) supervisory over the position which had been allocated for preschool programs.

Sometime before December 1, 1977, a position description questionnaire was prepared by appellant and his supervisor to reallocate the consultant position held by appellant to a new position of developmental disabilities state program supervisor. Appellant completed an employee qualification statement to the Personnel Division within the Department of Administration and Fiscal Control, which was responsible for reallocating the position and setting minimum qualifications.

On February 2, 1978, the director of the Department of Health and Social Services advised appellant that he failed to qualify for the supervisor position and notified appellant that the Personnel Rules required him to vacate his position within 30 days. On the same day, the Personnel Division notified appellant that he failed to qualify for the supervisor position under the minimum standards which were established.

On February 3, 1978, appellant filed a grievance with the director of the Department and continued working as a consultant until March 3, 1978, which was the date of his separation as set forth in the February 2, 1978, letter. On or about February 23, 1978, appellant met with the director of the Department at which time the director asked appellant to remain in the Department and to accept the second supervised position in the developmental disabilities unit on the condition that appellant qualify for the second position for which the minimum qualifications had not, at that time, been established, and on the further condition that appellant abandon his grievance as to his failure to qualify for the supervisor position. Appellant refused the offer.

* Chief Justice at time of oral argument.

Appellant was paid from the date of his separation on March 3, 1978, until June 19, 1978, at which time he was terminated from state employment for performance which was "less than satisfactory." For reasons which will be made more apparent in this opinion, this termination, having been ruled a nullity, is not significant to a resolution of the issues in this appeal.

## ISSUES ON APPEAL

The issues in this appeal are:

1. Were the minimum qualifications established for the position of developmental disabilities state program supervisor "unlawful" under the standards for judicial review by district courts and this court, under § 9–4–114(c), W.S.1977, Cum.Supp.1982, and § 9–4–115, W.S.1977?[1]

2. Were CSC's findings and conclusions that appellant did not qualify for the reallocated position of developmental disabilities state program supervisor "unlawful" under the standards for judicial review by district courts and this court, under §§ 9–4–114(c) and 9–4–115, supra?

3. Were CSC's findings and conclusions that there was an offer of lateral transfer, as mandated by the Personnel Rules, "unlawful" under the standards for judicial review by district courts and this court, under §§ 9–4–114(c) and 9–4–115, supra?

4. Were CSC's findings and conclusions that appellant's termination on June 19, 1978, was a nullity "unlawful" under the standards for judicial review by district courts and this court, under §§ 9–4–114(c) and 9–4–115, supra?

The district court and this court must determine whether CSC's findings, conclusions and order were supported by substantial evidence, thus rendering CSC's action *lawful* and not subject to being set aside by judicial review. The ultimate legal issue in this appeal is whether any of the agency actions with respect to appellant constitute *unlawful* actions under *any of the subparagraphs* of § 9–4–114(c)(ii), supra,[2] such that the agency action must be set aside?

## STANDARD OF REVIEW

The legislature has determined the scope of review of a final order of an administrative agency by the district court. Section 9–4–114(c), supra.

This court has previously determined the scope of its own review of the district court's action. We will review the agency action as though the appeal were directly to this court from the agency. This court is governed by the same rules of review as was the district court. *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* Wyo., 611 P.2d 427 (1980), and cases cited thereunder. See also *Town of Pine Bluffs v. State Board of Control of State of Wyoming,* Wyo., 647 P.2d 1365 (1982).

---

1. Effective January 1, 1983, these statutes were renumbered as §§ 16–3–114(c) and 16–3–115, respectively.

2. Section 9–4–114(c), W.S.1977, Cum.Supp. 1982, provides:

 "(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

 "(i) Compel agency action unlawfully withheld or unreasonably delayed; and
 "(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
 "(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
 "(B) Contrary to constitutional right, power, privilege or immunity;
 "(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;
 "(D) Without observance of procedure required by law; or
 "(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

## THE ESTABLISHMENT OF MINIMUM QUALIFICATIONS AND APPELLANT'S QUALIFICATIONS

It is clear that the Personnel Division of the Department of Administration and Fiscal Control is assigned the responsibility to determine minimum qualifications for state positions. Moreover, it is clear that the minimum qualifications for the supervisor position were adopted in accordance with the Personnel Rules (Chapters IX and X). The ostensible purpose for assigning the responsibility for all state positions to the centralized Department of Administration and Fiscal Control is to consider the state system as a whole and to achieve uniformity and fairness in salaries across state government. While input from appellant's supervisors in the Department of Health and Social Services is to be considered by the Personnel Division, it is the Personnel Division which is vested with the ultimate responsibility and obligation to prescribe the minimum requirements for the position. The procedure for reallocating a job position is set forth in the Personnel Rules (at pages 34, 41–42, and 45). A review of the record on appeal disclosed that the applicable procedures were followed.

■ The critical difference in the reallocated position was the requirement of three years' experience as a consultant, the position which appellant originally assumed. Concededly, appellant did not qualify as to the minimum prescribed experience requirement. The question of whether appellant had "other related * * * experience" as an alternative to the minimum experience requirement is a matter within the discretion of the agency. The testimony of Richard Paul Hodapp, Personnel Supervisor, Selection Supervisor for the Personnel Division of the Department of Administration and Fiscal Control, describes the procedures utilized in determining whether appellant qualified for the reallocated position. A review of the record discloses no basis to disagree with the agency determination that the appellant did not qualify. This court will not substitute its judgment on these matters for that of the administrative agency, nor will this court perform duties assigned by law to administrative boards. *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980).

It has also been held that in the absence of fraud or illegal action, this court should not reverse the final order of CSC in which the qualifications, as established by the Personnel Division, were approved. *Toavs v. State ex rel. Real Estate Commission*, Wyo., 635 P.2d 1172 (1981).

## LAWFULNESS OF MINIMUM QUALIFICATIONS

Appellant next contends that the minimum qualifications for the position of the reallocated developmental disabilities state program supervisor "were absurd, [and] bore no reasonable relation to the position." Such a contention is not a basis to set aside agency action and is limited by § 9–4–114(c), supra. Nowhere in this statute is absurdity a basis or ground for setting aside an agency action.

■ Assuming, however, for purposes of argument that by this contention appellant means that the minimum qualifications constitute unlawful agency action in that they are "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," § 9–4–114(c)(ii)(A), supra, then it is necessary to determine whether the minimum qualifications may be characterized as such.

The minimum qualifications for the supervisor position were as follows:

> "Completion of college coursework at the master's level in special education, clinical psychology or other closely related field, *PLUS* three years of full time work experience as a developmental disabilities program consultant or in a similar role in a developmental disabilities program; other related training and experience may be evaluated for relevance for partial substitution of the required training and experience." (Emphasis in original.)

Appellant contends that no one in Wyoming could have qualified for the new position, thereby drawing the inference that the

setting of the prescribed minimum qualifications was, on its face, arbitrary or, as appellant contends, "absurd."

Richard Hodapp's testimony explained the procedure utilized in prescribing minimum qualifications for positions in state government which are reallocated. Mr. Hodapp set forth a general format that is followed:

"Q. [BY MR. SALZBURG] How are minimum qualifications prepared?

"A. We or whoever is writing them has a general format that we follow. We do a thorough job analysis which is those written minimum qualifications. We will take the PDQ which is the principal job analysis tool and review it thoroughly, both the incumbent section and the supervisor section, to determine what knowledge and skills and types of abilities and experiences and education might be required to perform that job.

"We continue on from there. We will review the class structure. We will review other classes related to the class that we are reviewing to determine what the minimum qualifications are for similar or related classifications to insure uniformity in classifications, to determine what needs might arise within the organization.

"If necessary we may contact experts in the area. We may talk to supervisors, we may talk to others related to this area, but ask for their opinions we may review if necessary, we may review different documents like the Dictionary of Occupational Titles to get a better feel for the type of position, type of classification.

"Q. So, how long on the average does it take you to prepare minimum qualifications?

"A. On the average I would say three hours.

"Q. Are you familiar with the Uniform Guidelines on Employee Selection Procedure?

"A. Yes, I am.

"Q. Are you familiar with Professional Standards for Selection and Validation?

"A. Yes, I am.

"Q. Are those two reference materials that you might use on a day-to-day basis?

"A. They are reference materials. It is something you read and must know. It is nothing that are standards, professional standards against which you perform your work duties. You don't refer to them as such. It is something that you learn, you read, you learn, you memorize even, and you just make sure that you don't violate any of the principles or standards set forth.

"Q. As a general rule, would you, in your job try to comply with the principles and standards set forth in those two documents?

"A. Definitely, definitely.

"Q. Was the procedure you just outlined followed in the case of reallocation of the adult DD consultant to DD supervisor in Ed Atchison's case?

"A. Yes, it was."

It is clear that CSC, in determining the issues at the administrative level, recognized that the Personnel Division had the authority and responsibility to perform certain duties. As Mr. Hodapp's testimony indicates, the Personnel Division performs those duties in accordance with a prescribed format. It is not the function of the court to perform duties assigned by law to administrative agencies. *McGuire v. McGuire,* supra. If this court were to set aside the minimum qualifications, it would be in effect prescribing new minimum qualifications, thus performing a task assigned to state agencies. District courts and this court do not have the authority to perform those duties. *Laramie River Conservation Council v. Industrial Siting Council,* Wyo., 588 P.2d 1241 (1978); see also 14 Land & Water L.Rev. 607 (1979). Neither the district court nor this court on appeal may substitute its judgment for that of the administrative agency. *Shenefield v. Sheridan County School District No. 1,* Wyo., 544 P.2d 870 (1976).

### RIGHT TO A LATERAL TRANSFER

Appellant next directs attention to the rights available to state employees when

their positions are reallocated and the employee who previously held the former position does not meet the minimum qualifications for the position, as reallocated. As previously stated, appellant was notified that he did not qualify for the position as reallocated. The notice provided that appellant "shall not be allowed to remain in the position for more than thirty (30) days" after February 2, 1978, which was the date he received the written notice from the Personnel Division.

Both of the parties to this appeal agree that at the time of this action, Chapter XIV, § 3.a. of the Personnel Rules provided that when a reduction in force occurred, "employees in the affected positions shall, *if possible,* be given a transfer or an involuntary reappointment to another position in the agency." (Emphasis added.) The question arises as to whether it was possible for appellant to be transferred.

For a transfer to another position to have been possible, there were two prerequisites: (1) another position within the agency must have been available (Personnel Rules, Chapter VII, § 6); and (2) the candidate must have met the minimum qualifications of that position (id., at § 1.a.). The record on appeal demonstrates that there were no other positions available in the Department except the supervised position in the developmental disabilities unit. Insofar as appellant's qualification for the supervised position is concerned, appellant at the February 23, 1978, meeting with the director of the Department did not know whether he would qualify, because the position qualifications for the supervised position had not yet been prescribed by the Personnel Division. A decision as to whether another position was available for which appellant qualified could not have been made until the minimum qualifications for the supervised position had been prescribed by the Personnel Division.

The fundamental question, therefore, is whether, under the circumstances, appellant was extended a bona fide offer of lateral transfer as mandated by the Personnel Rules. If a bona fide offer of lateral trans-

fer was not made, then appellant may be quite correct in arguing that his refusal to accept the lateral transfer was justified. In addressing this issue in the next section of this opinion, this court has reviewed the record on appeal and the letter opinion dated April 13, 1982, from the district court. This court finds that the logic and result reached by the district court is persuasive; thus, the following section places great reliance on the findings of the district court as embodied in the letter opinion.

## RIGHT TO LATERAL TRANSFER WAS SUBSTANTIALLY AFFORDED TO THE APPELLANT

This is the most troublesome issue on appeal. As previously noted, appellant was given a conditional offer for lateral transfer. The offer was conditioned on his qualifying for the position and abandoning his grievance relative to his failure to receive the supervisor position. The critical factual question in resolving this issue on appeal is why appellant refused the transfer.

 It is indisputable that the director of the Department placed an impermissible, improper and unconstitutional condition upon the lateral transfer; namely, appellant was required to abandon his challenge to the determination that he did not qualify for the supervisor position. That this condition was improper was recognized by CSC itself. It has also been recognized under the holding of *Vitarelli v. Seaton, Secretary of the Interior,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). This court recognizes the general principle that conditions precedent are not favored in the law; especially where the intent is to contravene established statutory laws or regulations. *Cheyenne Dodge, Inc. v. Reynolds and Reynolds Company,* Wyo., 613 P.2d 1234 (1980); *Tri-County Electric Association, Inc. v. City of Gillette,* Wyo., 584 P.2d 995 (1978).

The critical question in resolving this issue is whether appellant's refusal of the lateral transfer was the product of the impermissible condition (i.e., the abandoning of the grievance) or whether it was related to the permissible condition (i.e., that appel-

lant must qualify for the position). The factual issue was resolved by CSC when it found that the abandonment of the grievance, though an improper condition, was not the reason for appellant's refusal to accept the offer of the lateral transfer. It was appellant's doubt that he would qualify for the position that caused him not to accept the offer. In fact, CSC specifically found that appellant refused the offer of lateral transfer because there were no guarantees that he would qualify for the supervisor position. The critical portion of the transcript, wherein appellant testified on this subject, reads as follows:

"Q. [BY MR. SALZBERG] Why didn't you say, 'I will accept the position and if I qualify and if you hire me I will drop my grievance'?

"Why didn't you say that?

"A. Perhaps that was an alternative that I didn't perceive at that time.

"Q. You said that the only problem with the position was you were afraid you weren't going to qualify for it or you were somehow not going to get it, right?

"A. That's correct.

"Q. Why couldn't you guarantee getting it before you complied with his request?

"A. That's a question—this should be directed towards Mr. Nelson in the fact that I don't believe he would have guaranteed me that position."

Therefore, by virtue of the testimony adduced from the appellant himself, it is apparent that the improper condition was not the cause of appellant's failure to get the transfer; the cause of appellant's failure to obtain the transfer and his refusal thereof was his unwillingness to gamble as to whether he would qualify for the new position once the minimum qualifications had been prescribed.

■ The question of causation or the nexus between an allegedly improper condition and the action taken by the agency is decisive in light of § 9–4–114(c)(ii)(D), supra. If CSC would have found that appellant's refusal of the lateral transfer was caused by the impermissible condition, and yet sustained appellant's separation from

state government, then CSC's action would have been illegal because the action was "[w]ithout observance of procedure required by law." Id. To the contrary, CSC found no nexus between the attachment of the impermissible condition and appellant's refusal to get the lateral transfer. This court finds that the administrative agency's finding in this regard is supported by substantial evidence; therefore, there is no illegal agency action. *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, supra; *Clements v. Board of Trustees of Sheridan County School District No. 2, in County of Sheridan*, Wyo., 585 P.2d 197 (1978).

## SUBSEQUENT TERMINATION WAS A NULLITY

CSC concluded that the attempted dismissal and termination of appellant by the June 19, 1978, letter was a nullity and of no force and effect. If, as a probationary employee, appellant was properly separated from service on March 3, 1978, as this court has found, then the subsequent letter of termination would have no meaning or consequence.

While it is still bothersome that the state elected to pay appellant from the time of his separation on March 3, 1978, until the letter of termination was issued on June 19, 1978, this unresolved puzzle is not germane to a determination of this appeal. Suffice it to say that this court cannot reach the issue of the propriety of the later termination if this court affirms the process under which the agency caused appellant to be separated on March 3, 1978.

## CONCLUSION

In analyzing the substantial evidence issue raised by appellant, the reviewing court must look at the entire record to determine whether substantial evidence exists supporting the agency action. *Toavs v. State ex rel. Real Estate Commission,* supra. The substantial evidence rule as enunciated by this court is well known. *Sage Club, Inc. v. Employment Security Commission of Wyo-*

*ming,* Wyo., 601 P.2d 1306 (1979); *Clements v. Board of Trustees of Sheridan County School District No. 2, in County of Sheridan,* supra; *Laramie River Conservation Council v. Industrial Siting Council,* supra; *Shenefield v. Sheridan County School District No. 1,* supra; *Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont,* Wyo., 486 P.2d 235 (1971).

In the previous sections of this opinion, the court has concluded that the agency action was not unlawful under any of the subsections of the Wyoming Administrative Procedure Act which govern judicial review of agency action. This court upholds the agency action, as did the district court.

It is apparent from the decision and opinion of the district court that it found substantial evidence to support the agency actions which resulted in the separation of appellant from state service.

Affirmed.

THOMAS, Justice, dissenting, with whom ROSE, Justice, joins.

I have tried very hard to accept the resolution of this case in accordance with the views expressed in the majority opinion, but I am unable to do so. It is my view that we are confronted with administrative action which was contrary to a significant constitutional right of Edward M. Atchison, and that we should hold that agency action unlawful and set it aside. It even may be that I am unduly expanding upon the ambit of this appeal, but my concern over a constitutional right which I regard as fundamental compels me to do so.

My point of departure is language appearing on page 23 of the majority opinion. It there is said:

"It is indisputable that the director of the Department placed an impermissible, improper and unconstitutional condition upon the lateral transfer; namely, appellant was required to abandon his challenge to the determination that he did not qualify for the supervisor position. * * * "

The language quoted above was presaged by the following comment found in the statement of facts at page 19 of the majority opinion:

" * * * On or about February 23, 1978, appellant met with the director of the Department at which time the director asked appellant to remain in the Department and to accept the second supervised position in the developmental disabilities unit on the condition that appellant qualify for the second position for which the minimum qualifications had not, at that time, been established, *and on the further condition that appellant abandon his grievance as to his failure to qualify for the supervisor position.* * * * " (Emphasis added.)

The majority of the court choose to treat with this as an issue with respect to whether the agency observed the procedure required by law, which it is mandated to do by § 9–4–114(c)(ii)(D), W.S.1977 (now found at § 16–3–114(c)(ii)(D), W.S.1977 Oct. 1982 Rev.). That procedure required the extension of an opportunity for lateral transfer, if possible. The majority then concludes that since as a matter of fact the record demonstrates there was no nexus between the unlawful condition and Atchison's rejection of the offer of lateral transfer the unlawful condition may be disregarded. The majority holds that the court is not confronted with agency action, findings, or conclusions which are "without observance of procedure required by law" because Atchison said he was not subjectively affected by the unlawful condition.

For me this disposition simply fails to recognize the more significant question as to whether this is agency action "contrary to constitutional right," which would be violative of § 9–4–114(c)(ii)(B), W.S.1977 (now found at § 16–3–114(c)(ii)(B), W.S.1977, Oct.1982 Rev.). While at one point this issue was subject to debate, it is the law of this case that Edward M. Atchison was entitled to pursue his grievance. Atchison's right to pursue that grievance is protected by the due process clauses of both the state

and federal constitutions.[1] As this court said in *Bulova Watch Company v. Zale Jewelry Company of Cheyenne,* Wyo., 371 P.2d 409, 417 (1962):

"Article 1, § 6, Wyoming Constitution, requires that lawful process be employed before a person is deprived of life, liberty or property. The liberty envisioned is not alone a liberty of person such as is offended by enslavement, imprisonment or other restraint. It contemplates a person's liberty to do all that is not made unlawful. * * * "

This language would encompass Atchison's right to pursue his grievance in accordance with the applicable rules.

The chilling effect upon Atchison's exercise of his constitutional right to pursue his grievance of the "impermissible, improper and unconstitutional condition upon the lateral transfer; namely, appellant was required to abandon his challenge to the determination that he did not qualify for the supervisor position" is obvious. It becomes the paramount consideration in this case. In other contexts the Supreme Court of the United States has spoken against the chilling effect of certain kinds of State action. In *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), the court said:

"For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his

exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' [Citation.] Such interference with constitutional rights is impermissible."

Of similar effect is *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261, reh. denied 433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102 (1977), the following language is found:

" * * * Equally clear is the proposition that a government may not require an individual to relinquish rights guaranteed him by the First Amendment as a condition of public employment. * * * "

In *Louisiana ex rel. P.F. Gremillion v. National Association For The Advancement of Colored People,* 366 U.S. 293, 81 S.Ct. 1333, 1335, 6 L.Ed.2d 301 (1961), the Court stated with respect to the right of due process:

"It is not consonant with due process to require a person to swear to a fact that he cannot be expected to know (cf. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519) or alternatively to refrain from a wholly lawful activity."

As a matter of public policy, the State of Wyoming cannot accept in any form agency action that is so obviously designed to inhibit the exercise of a constitutional right. To prevent such impermissible, improper and unconstitutional conditions from being attached to the exercise of their rights by citizens this court should hold unlawful and set aside the agency action which entails such a chilling effect. Otherwise, who could be expected to resist the temptation to condition agency action required by law upon the relinquishment of constitutional rights? If the offeree succumbed the mat-

1. Art. 1, § 6 of the Constitution of the State of Wyoming provides:

"No person shall be deprived of life, liberty or property without due process of law." This provision of the Constitution of the State of Wyoming well may be regarded as implementing the language of the Fourteenth Amendment to the Constitution of the United States of America, which in pertinent part provides as follows:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *."

ter never would be tested, and if he did not there always would be the opportunity to protect such unlawful conduct by asserting that it had no subjective impact upon the citizen's decision.

It is for this reason that the violation of subsection (B) of our statute cannot be justified in the same manner as that in which the majority opinion has attempted to justify the asserted violation of subsection (D) of the statute. The right to due process is a fundamental constitutional right. In *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 1439, 18 L.Ed.2d 527 (1967), the Supreme Court discusses the primacy of due process in this language:

> " * * * Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which a state may exercise. * * * "

This right cannot be burdened with a requirement that a nexus be shown between the condition of relinquishment of the right in order to accept the State's offer and the citizen's decision in refusing the offer. This does, however, appear to be the thrust of the majority opinion in this case. The court is saying, in effect, that if the employee expresses a subjective state of mind evidencing that the unlawful condition had no impact upon his decision in the circumstances the court then will ignore the constitutional violation.

My thesis is that the right to due process of law is so compelling in our jurisprudence and so essential in our society that we must not suggest that it may be burdened. The right to due process is burdened, however, by a rule to the effect that when the right is chilled by State action this unlawful conduct will be ignored if it had no impact in fact upon the citizen. Without the right of due process the other constitutional rights and privileges of our citizens, and indeed the rule of law, become illusory. The right to due process is the cornerstone of our other rights and liberties, and it must not be undercut. All the other provisions of our constitutions assuring rights to citizens are of no avail if the right to due process can be circumvented or successfully inhibited.

I, therefore, would set aside the agency action in this case on the ground that it is unlawful because it was taken contrary to Edward M. Atchison's constitutional right to due process of law. The potential chilling effect of the unlawful condition justifies that result for me without regard to its actual effect. The only remaining task should be that of fashioning the appropriate remedy.