Rogers RIRIE, Appellant (Plaintiff),

v.

BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. ONE, CROOK COUNTY, WYOMING; Clell Claar; Kelly Dennis; Dan Vore; Donald Anderson; Roxanne Peters; Dan Neiman; Gerald Popham; Linda McAmis; R. Reynard Mills; and Ottlin Wegner, (individually), Appellees (Defendants).

No. 83–40.

Supreme Court of Wyoming.

Dec. 9, 1983.

Richard S. Dumbrill of Jones, Dumbrill & Hansen, Newcastle, for appellant.

Mark L. Hughes of Hughes & Dumbrill, Sundance, for appellees.

A.G. McClintock, Atty. Gen., Edgar Young, Asst. Atty. Gen., Herbert K. Doby, Legal Intern, Cheyenne, for the State of Wyo.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

Rogers Ririe appeals from the judgment of the district court affirming the decision of the Board of Trustees of School District No. One, Crook County, Wyoming, to terminate his contract after five years of employment with the school district. We will affirm.

In the fall of 1977, Mr. Ririe was hired as an Educational Resource Center (ERC) facilitator to implement and monitor the instructional programs for handicapped children throughout the Crook County School District. He held a continuing contract in that position at the time of his discharge in 1982.

The position of ERC facilitator is a relatively recent innovation in this state, having originated in the 1970's along with the concept of locally-based resource centers. According to the position description prepared by the Wyoming Department of Education,[1] the facilitator is expected to promote the development and implementation of the ERC program, to assist the ERC staff and to organize educational services to meet their needs, to aid in the identification of children with learning disabilities, and to participate in the development of appropriate curricula for these children. The position description specifies the educational background and prior experience required of an ERC facilitator and lists as additional qualifications the ability to relate to others and to communicate effectively.

In the summer of 1980 the school board hired Dr. Ottlin Wegner as district superintendent. Dr. Wegner conducted his first administrative evaluation of Rogers Ririe in November, 1980, at which time he rated appellant's performance level as satisfactory or better. He noted, however, that his opportunity for observation had been inadequate. A second evaluation of appellant was made in January, 1982. At this time Dr. Wegner provided written comments concerning deficiencies in Mr. Ririe's professional relationship with the ERC staff and the administration. He noted that no improvements had been made in these areas since their discussion the previous spring. Dr. Wegner recommended that appellant be placed on probationary status and not retained on the staff.

At a school board meeting conducted March 8, 1982, Dr. Wegner recommended that appellant's contract be terminated. The board accepted his recommendation by a vote of seven to two, and a timely notice, specifying the reasons for termination, was subsequently given to Mr. Ririe. At appellant's request, a hearing was held before the board. Pursuant to agreement of the

1. A copy of the position description is appended to this opinion.

parties, the proceedings were conducted by an independent hearing examiner.

Prior to the presentation of evidence at the hearing, an extensive voir dire of the members of the school board took place. The board was questioned first as a group and then individually, in chambers, to determine whether they could function as an impartial tribunal in appellant's case. Counsel for appellant challenged the entire board on the ground that their previously recorded vote to accept the superintendent's recommendation of termination precluded a fair and impartial decision based on the evidence presented at the hearing. The hearing examiner denied appellant's request to disqualify the board as a whole and refused to appoint himself as final decision maker.

Counsel for appellant then challenged three board members on the ground that they were biased as a result of their knowledge of an alleged agreement between Dr. Wegner and the board to hire Dr. Wegner's wife and their awareness of Mr. Ririe's refusal to hire Mrs. Wegner in the ERC program. The hearing examiner again denied appellant's requested relief, asserting that while such an agreement might reflect on the motive of Dr. Wegner in recommending termination, it did not indicate prejudice on the part of the board members.

Finally, the appellant's attorney subpoenaed the three challenged board members and advised that they would be called to testify concerning the alleged agreement to employ Mrs. Wegner in the school district. The hearing examiner refused to permit the board members to testify along these lines, ruling that such evidence was irrelevant.

At the close of the hearing the school board voted to support the termination of Rogers Ririe as ERC facilitator. In its Findings of Fact and Conclusions of Law the board determined that Mr. Ririe was incompetent to continue in his position and sustained the superintendent's recommendation of termination on the following grounds:

"a) Rogers Ririe has a demonstrated inability to communicate effectively with the professional staff with whom he must work as facilitator including building principals, special education staff, and specialized staff to the special education program. This demonstrated inability to communicate effectively has caused Rogers Ririe to lose the trust of many staff members and this lack of trust in him and his communication problems inhibit his proper functioning and capacity to perform his duties. Rogers Ririe's inability to effectively communicate as demonstrated to the Board of Trustees at the hearing in this matter has caused the Board of Trustees to lack confidence in Rogers Ririe's ability to perform his job.

"b) Rogers Ririe's failure to communicate registration procedures to the special education staff for the State Department Of Education Computerized Registration plan in a timely and precise manner and allowing the registration to be forwarded with two major errors which could have been costly to the School District.

"c) Rogers Ririe is lacking in those qualities of leadership which are necessary to facilitate the program staff he must work with on a continuing basis. The leadership problems stem from Rogers Ririe's inability to communicate effectively, loss of trust by many staff members and his few contacts with the Hulett Center, Sundance Center and country schools.

"d) Rogers Ririe has provided a divisive influence in contacts with staff members and many of his actions have been detrimental to establishment of a harmonious relationship with and among the staff."

The district court affirmed the board's order of termination. The court ruled that the school board had observed all statutory and procedural requirements of law, that no constitutional rights of appellant had been denied and that the board's finding of incompetency was supported by substantial evidence. With respect to this last ruling, the judgment of the court provides:

"The Board of Trustee's decision to terminate the employment of Rogers Ririe for incompetency in that Rogers Ririe has a demonstrated inability to communicate

effectively with the professional staff with whom he must work including building principals, special education staff, and specialized staff involved with the special education program and that Rogers Ririe lacks those qualities of leadership necessary to facilitate the program staff he must work with on a continuing basis is supported by substantial evidence and is good cause for termination."

## THE ISSUES

The appellant raises in his brief the following issues for our consideration on appeal:

"I. Can a School District Board or members of that Board act as fair and impartial examiners of the evidence at an administrative hearing to retain or terminate a 'continuing contract teacher' after having voted, by recorded vote at a previous meeting, to fire the teacher?

"II. Is the Wyoming Administrative Procedure Act unconstitutional in that the act fails to provide a means by which a fair and impartial hearing officer or tribunal can be provided when the administrative board is shown to be biased or prejudiced, or does W.S.1977 § 16–3–112(e) allow for the appointment of a hearing examiner to try the final issue in such a case?

"III. Did the hearing examiner err in refusing to disqualify three board members from hearing the case, members who were parties to an agreement with Superintendent Wegner that his wife would be given a job in the School District if one were available, and did the hearing examiner err in refusing to allow Mr. Ririe's attorney to call the same three board members as witnesses to show that Dr. Wegner's motive in firing the Appellant was that the Appellant had refused to hire Dr. Wegner's wife to fill a vacant position in the Appellant's department?

"IV. Is W.S.1977, 16–3–107(h) unconstitutional because it provides that no member of an administrative body can be compelled to testify as a witness in a hearing before that agency when the member is a material witness to an element of the defense of the person whose rights are being determined?

"V. As a matter of law, did Dr. Wegner, the superintendent, and the Board take the steps and observe the procedures that are necessary under the Administrative Procedures Act and the Wyoming laws dealing with continuing contract teachers, or did they act arbitrarily and capriciously in terminating his contract in which he had a property right?

"VI. As a matter of law does the charge or allegation of an 'inability to communicate effectively with the professional staff' present a standard of conduct that is sufficiently clear so that a teacher can be expected to conform to a standard, or is such a standard impossible for one person to control since communication takes action by both the one who speaks and the one who listens?

"VII. As a matter of law, are the findings of fact which remained in issue at the close of the proceeding, and which were necessary to support the termination of a continuing contract teacher, supported by *substantial* evidence?"

Before addressing the issues presented by appellant, it is necessary to consider a preliminary matter raised by appellees in their motion to dismiss this appeal.

## RULE 5.07, W.R.A.P. CONSIDERATIONS

After the appellant had timely filed copies of his brief with this court and had served a copy on opposing counsel, appellees filed a motion to dismiss the appeal on the ground that appellant failed to serve a copy of his brief on the state attorney general as required by Rule 5.07 of the Wyoming Rules of Appellate Procedure. Appellant responded to appellees' motion by serving a copy of his brief upon the attorney general and moving this court to allow time for the attorney general to reply. Appellant, in his motion, questioned the applicability of Rule 5.07 to an appeal from a district court judgment affirming an administrative action. We issued an order granting the attorney general an opportunity to intervene as an

appellee and to file a brief. We reserved the question of the jurisdiction of this court to hear the appeal until after oral arguments.

The threshold questions which we must now consider are (1) whether Rule 5.07 applies to all cases in which a party on appeal challenges the constitutionality of a statute, and (2) whether failure to comply with Rule 5.07 deprives this court of jurisdiction to hear the appeal.

All appeals to this court are governed by the Wyoming Rules of Appellate Procedure. Rule 5.07, W.R.A.P. provides:

"In all cases both criminal and civil, in which the state is a party, or in which any of its property is involved, or in which a statute, ordinance or franchise is alleged to be unconstitutional, including criminal cases upon reserved questions, and cases arising upon exceptions taken in a criminal case by the prosecuting attorney, counsel shall also serve a copy of their brief upon the attorney general."

Despite the plain language which says that the rule governs "in all cases," appellant argues that the rule applies only to declaratory-judgment actions and to cases covered by former Supreme Court Rule 12(e). Appellant premises his assertion on the following publisher's note to Rule 5.07:

"Source.—Rule 12(e), Sup.Ct.—with minor addition based on § 1–37–113."

Rule 12(e), formerly applicable to appeals to this court, provided:

"*Service of briefs upon attorney general.* —In all cases both criminal and civil, in which the state is a party, or in which any of its property is involved, including criminal cases upon reserved questions, and cases arising upon exceptions taken in a criminal case by the prosecuting attorney, counsel shall also serve a copy of their brief upon the attorney general."

Under this rule, an appellant challenging the constitutionality of a statute was not required to serve a copy of his brief on the state attorney general.

■ Section 1–37–113, W.S.1977 prescribes the procedure to be followed in declaratory-judgment cases and has nothing to do with appeals:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party and may be heard. If the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the state shall be served with a copy of the proceeding and may be heard."

It is evident that by adopting the current Rule 5.07, W.R.A.P., this court intended to expand Rule 12(e), Sup.Ct., to include any appeal in which a party questions the constitutionality of a statute. The fact that the language of the rule parallels the language of § 1–37–113 does not imply any intent to limit the scope of the rule to constitutional challenges which arise by way of declaratory judgments.

■ In *Tobin v. Pursel,* Wyo., 539 P.2d 361 (1975), this court discussed the purpose of the requirement that a copy of appellant's brief be served upon the attorney general when statutory constitutional questions are raised. There we said:

"The attorney general, being the chief legal officer of the State, has a duty to protect the interests and the welfare of the people in declaratory judgment actions where statutory constitutional questions are in issue. 539 P.2d at 365."

Although Tobin was concerned with an appeal from a declaratory-judgment action, the need for the state's chief legal officer to protect the public interest does not depend upon the classification of the proceeding in which the constitutional challenge arises. Accordingly, Rule 5.07 was adopted to permit the attorney general to react to all challenges to the constitutionality of Wyoming statutes. We hold that Rule 5.07, W.R.A.P., means what it says—in all cases in which a statute is alleged to be unconstitutional, including the case at bar, counsel

is required to serve a brief upon the attorney general.

We now consider whether appellant's failure to serve a copy of his brief upon the attorney general in a timely fashion is fatal to this appeal. In *Tobin v. Pursel,* supra, we considered the consequences of appellant's failure to serve the attorney general with a copy of the proceeding in a declaratory-judgment action. There we dismissed the appeal, holding

" * * * that the requirements of [the Declaratory Judgments Act], directing that the attorney general shall be 'served with a copy of the proceeding' and 'be entitled to be heard' are mandatory and go to the jurisdiction of the court, and that the failure to comply with the mandates renders any lower court order void." 539 P.2d at 366.

We relied, in *Tobin,* on *State v. Kelly,* 33 Wyo. 420, 240 P. 207 (1925), a criminal case, and *In the Matter of the Claim of Hughes,* Wyo., 167 Cal.App.2d 803, 335 P.2d 204 (1960), a workmen's compensation case. In both instances this court held that the failure to serve a brief upon the attorney general in compliance with court rules is sufficient ground for dismissal of the appeal. In Tobin we determined that a remand to the district court was appropriate to permit compliance with the Declaratory Judgments Act and to give the attorney general an opportunity to be heard prior to the lower court's ruling on the validity of the challenged statute.

In the instant case, the attorney general has submitted a brief which addresses the constitutional issues raised in this appeal. We see no prejudice to appellee as a result of appellant's belated compliance with Rule 5.07. More importantly,

this court is not asked to render a decision on the constitutionality of a state statute without the benefit of the viewpoint of the representative of the people of this state. Therefore, we hold that the failure of appellant to comply with Rule 5.07 was cured in this case, and this court has jurisdiction to hear this appeal. We would, however, admonish counsel in the future to submit required briefs to the attorney general in a timely fashion, since failure to do so can render an appeal vulnerable to dismissal.

I

"Can a School District Board or members of that Board act as fair and impartial examiners of the evidence at an administrative hearing to retain or terminate a 'continuing contract teacher' after having voted, by recorded vote at a previous meeting, to fire the teacher?"

The Wyoming Teacher Employment Law, §§ 21–7–101 to 21–7–114, W.S.1977, specifies the procedure for terminating the contract of a continuing contract teacher. If either the superintendent or a school board member recommends that a contract be terminated, the teacher must be notified of the recommendation and the reasons therefor.[2] Under § 21–7–108, a continuing contract teacher, upon timely request, is entitled to a hearing before the board with respect to the recommended termination.[3]

Pursuant to statutory and constitutional mandates such hearings are to be conducted in a fair and impartial manner. Section 16–3–112(a) of the Wyoming Administrative Procedure Act specifies in part:

" * * * The functions of all those presiding in contested cases shall be conducted in an impartial manner."

---

2. Section 21–7–106, W.S.1977, provides:

"(a) A continuing contract teacher shall be notified of a recommendation of termination by the superintendent or any member of the board by giving such teacher written notice thereof, together with written reasons therefor on or before March 15 of any year.

"(b) Termination under such recommendation if approved by the board will be effective at the end of the contracted school year in

the year in which notice of such termination is given."

3. Section 21–7–108, W.S.1977, provides:

"A continuing contract teacher shall be entitled to a hearing before the board within thirty (30) days after receipt of notice of a recommendation of termination by requesting same in writing within at least ten (10) days after receiving said notice."

Constitutional concepts of due process which require a fair hearing before an impartial tribunal have been held to apply to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973); *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322, 327 (1968).

When Rogers Ririe received the notice that Superintendent Wegner had recommended his termination, the school board had already voted to approve that recommendation. The question, therefore, arises as to whether the agency which reached an earlier decision to terminate Ririe's contract is capable of functioning as a fair and impartial tribunal to rule on the merits of its own prior decision.

We observe at the outset that the United States Supreme Court decision in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), has rendered invalid any per-se rule to the effect that federal due process is violated whenever an agency hears a contested case subsequent to rendering an initial decision on the merits of that case. In *Withrow* the examining board, charged with licensing physicians in Wisconsin, presided at an extensive investigative hearing prior to notifying appellee that a "contested hearing" would be held to determine whether his license should be suspended. The board later issued " 'Findings of Fact,' 'Conclusions of Law,' and a 'Decision' " in which the board found that probable cause existed to believe that appellee had engaged in prohibited conduct. In reversing the district court's holding that board action to suspend Dr. Larkin following its own investigative determination would violate constitutional due process, the United States Supreme Court said:

> "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication * * * must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, con-

ferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." 421 U.S. at 47, 95 S.Ct. at 1464.

The Court went on to say:

> " * * * The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)." 421 U.S. at 55, 95 S.Ct. at 1468.

Withrow was followed in *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773 (9th Cir.1982), a case in which a school board, after a full evidentiary hearing, affirmed its earlier decision to dismiss a high school teacher. The court held that the board's prior decision did not render the subsequent hearing constitutionally inadequate:

> "Appellant characterizes the April 7 hearing as a mere review of the March 11 termination decision and, accordingly, claims his right to a de novo trial was violated. Under the circumstances of this case, however, we cannot agree that the April 7 hearing was unconstitutionally infirm because of the board's participation in the prior termination decision. Irrespective of whether the April 7 hearing is labeled a review of a prior hearing or a de novo hearing, the critical inquiry is whether it comported with due process. The key component of due process, when a decisionmaker is acquainted with the facts, is the assurance of a central fairness at the hearing. See *Withrow*, supra, 421 U.S. at 46, 95 S.Ct. at 1463; *Vance v. Chester County Bd. of School Trustees*, 504 F.2d 820, 826 (4th Cir.1974). * * *

*     *     *     *     *     *

"The April 7 post-termination hearing met the standards of fairness required by the due process clause. Appellant's counsel was present, he was permitted to cross-examine all the witnesses (except for one who was ill), and was given ample opportunity to rebut all evidence which the school board had heard on March 11. No issues were raised at the prior meeting which were not thoroughly examined at the subsequent hearing. The board members did not have any personal or financial stake in the action, nor was any personal animosity alleged. For these reasons, we uphold the validity of the subsequent dismissal action. See *Bignall v. North Idaho College,* 538 F.2d 243, 247 (9th Cir.1976)." 667 F.2d at 779–780.

In the present case the superintendent of the school district, Dr. Wegner, investigated the performance of Mr. Ririe as ERC facilitator and recommended that Ririe's contract be terminated at the close of the school year. His recommendation was approved by the school board.

■ In our consideration of whether the board was capable of conducting a fair and impartial hearing following its earlier vote to terminate appellant's contract, we look at the extent to which the board was bound by its initial decision. The board's vote of approval may properly be viewed as a determination that, based upon the evidence assembled as a result of the superintendent's investigation, probable cause existed to terminate Ririe's contract. Absent a timely request for a hearing, Ririe's contract would automatically terminate as a result of the board's action.

Under the Supreme Court's holding in Withrow, the exposure to the evidence presented by the superintendent in a nonadversary, investigative forum for the purpose of rendering an initial termination decision is insufficient in itself to undermine the fairness of the board members at the later adversary hearing. The justification for this rule is that the adversary-type hearing afforded the board a complete view of the evidence and, based upon the additional information, the board was free to reverse or affirm its earlier decision. The following analogies were cited by the Supreme Court in *Withrow v. Larkin,* supra, 421 U.S. at 56–57, 95 S.Ct. at 1469:

"Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been though to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence. Nor has it been thought that a judge is disqualified from presiding over injunction proceedings because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction. It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law. We should also remember that it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around. See [*F.T.C. v.*] *Cement Institute,* 333 U.S. [683] at 702–703, 68 S.Ct. [793] at 804 [92 L.Ed. 1009; *N.L.R.B. v.*] *Donnelly Garment Co.,* 330 U.S. [219] at 236–237, 67 S.Ct. [756] at 765 [91 L.Ed. 854]."

The Court went on to say with respect to the agency's decision-making process:

" * * * Here, if the Board now proceeded after an adversary hearing to determine that appellee's license to practice should not be temporarily suspended, it would not implicitly be admitting error in its prior finding of probable cause. Its posi-

tion most probably would merely reflect the benefit of a more complete view of the evidence afforded by an adversary hearing." 421 U.S. at 57–58, 95 S.Ct. at 1469–70.

We think the reasoning in Withrow is sound and agree with that which was said in *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976):

" * * * Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *FTC v. Cement Institute,* 333 U.S. 683, 700–703, 68 S.Ct. 793, 803–804, 92 L.Ed. 1010 (1948)."

Therefore, we hold that neither constitutional due process nor statutory requirements of an impartial hearing mandate the disqualification of the entire board as a result of the board's having considered the results of the superintendent's investigation and reached an initial decision.

■ Our holding that the entire board was not subject to automatic disqualification does not mean that every individual member of the board was capable of rendering a decision in an unbiased manner. While there exists "a presumption of honesty and integrity in those serving as adjudicators," *Withrow v. Larkin,* supra, 421 U.S. at 47, 95 S.Ct. at 1464, this presumption may be overcome by evidence to the contrary. The Court in Withrow recognized as much when it said:

"That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." 421 U.S. at 58, 95 S.Ct. at 1470.

In *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976), two of the jurists would have afforded the parties in a contested case the right to inquire of the members of the agency as on voir dire. After noting that the plaintiff carries the burden of establishing any impropriety on the part of any board member, the author of the opinion said:

"If the appellee here is guaranteed his constitutional rights of fair and impartial hearing and the burden of proving bias is his, but he is denied an access route along which he may travel in pursuit of these rights—then he has no rights. * * *" 549 P.2d at 1167.

We commend the hearing examiner in the present case for providing counsel the opportunity to engage in voir dire. We recognize this procedure as a valuable means of discovering individual prejudices—perhaps hidden to all, including the holder—and of emphasizing to the board the importance of conducting a fair and impartial hearing.

■ As noted above, the school board was subjected to an extensive voir dire. From the responses to this inquiry, the hearing examiner determined that the board members were capable of rendering an impartial decision based on the evidence presented at the hearing. In denying appellant's motion to disqualify all of the board members, the examiner said:

" * * * All the board at this point has affirmatively stated that they would be willing to change their mind if the evidence convinced them to change their mind today, and I think that's the important thing."

We therefore hold that the vote to terminate appellant's contract did not prevent the school board from acting as fair and impartial examiners of the evidence at the subsequent hearing.

## II

"Is the Wyoming Administrative Procedure Act unconstitutional in that the act fails to provide a means by which a fair and impartial hearing officer or tribunal can be provided when the administrative board is shown to be biased or prejudiced,

or does W.S.1977 § 16–3–112(e) allow for the appointment of a hearing examiner to try the final issue in such a case?"

■ Appellant's second argument depends upon a finding that the entire board was unqualified to serve as a fair and impartial tribunal. He urges that to the extent that the Wyoming Administrative Procedure Act fails to provide, in such cases, for a fair and impartial decision maker, the act is unconstitutional. In view of our holding that the board as a whole was not subject to disqualification, we will not consider appellant's second issue. To do so would be to render an impermissible, advisory opinion. *Tobin v. Pursel,* supra, 539 P.2d at 363. Consequently, we reserve the question whether the rule of necessity [4] permits an admittedly biased administrative board to preside at a hearing, *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* supra, 549 P.2d at 1168 (Rose, J., and Armstrong, D.J., Retired, separate opinion) or whether § 16–3–112(e),[5] enacted subsequent to our decision in Spiegel, allows a hearing examiner to render a decision when the requirements of due process so dictate.

### III

"Did the hearing examiner err in refusing to disqualify three board members from hearing the case, members who were parties to an agreement with Superintendent Wegner that his wife would be given a job in the School District if one were available, and did the hearing examiner err in refusing to allow Mr. Ririe's attorney to call the same three board members as witnesses to show that Dr. Wegner's motive in firing the Appellant was that the Appellant had refused to hire Dr. Wegner's wife to fill a vacant position in the Appellant's department?"

■ Appellant first contends that the hearing examiner erred in refusing to disqualify three board members from hearing the case because of their participation in an agreement to hire Dr. Wegner's wife. Because the board was subjected to voir dire, information is available to assist us in our review of appellant's contention. The hearing examiner, in chambers, questioned each board member individually concerning his or her involvement in the agreement and awareness of Ririe's refusal to hire Mrs. Wegner in the ERC program. Each member was questioned as to the effect such an agreement would have on his or her ability to render a decision based on the evidence presented at the hearing. Ruling that voir dire had revealed no disqualifying prejudice, the examiner denied appellant's challenge of three particular board members. Our review of the record indicates that the board informed Dr. Wegner, at the time of his hiring, that district rules did not preclude the employment of his wife within the school district and that she was free to apply for available positions. Only one of the challenged members indicated an awareness of allegations that Dr. Wegner had sought to have Mrs. Wegner hired in the ERC program and that Mr. Ririe had refused. We conclude that the hearing examiner's refusal to disqualify three board members for cause is supported by substantial evidence in the record.

■ Appellant also urges that the hearing examiner erred in refusing to allow appellant to call the challenged board members as witnesses to prove an improper motive on the part of Dr. Wegner in recommending termination. The examiner disallowed such testimony as being irrelevant.

Under § 16–3–108(a) of the Wyoming Administrative Procedure Act, irrelevant

---

**4.** Under the rule of necessity, an entire board is not subject to disqualification if it is the only tribunal with jurisdiction to hold the hearing. *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* supra, 549 P.2d at 1167.

**5.** Section 16–3–112(e), W.S.1977, provides:

"When required by law an agency shall adopt rules and regulations providing a procedure for the use and the selection of an administrative hearing officer. An agency shall not delegate the authority to make final decisions to an independent administrative hearing officer unless required by law."

and unduly repetitious evidence is inadmissible. That section provides in part:

"(a) In contested cases irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued except upon consideration of the whole record or such portion thereof as may be cited by any party and unless supported by the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs."

A review of the record indicates that both Dr. Wegner and Mr. Ririe testified concerning the alleged agreement, thereby providing ample evidence of any possibly improper motive underlying Dr. Wegner's recommendation. The record also indicates that Mr. Ririe's decision not to hire Mrs. Wegner preceded Dr. Wegner's *initial* evaluation, in which Ririe received a rating of satisfactory, a fact which goes to the relevancy of the information. Furthermore, appellant himself testified that he did not believe that his failure to hire Mrs. Wegner had any bearing on the superintendent's recommendation. We conclude that substantial evidence exists in the record in support of the hearing examiner's disallowance of the offered testimony.

### IV

"Is W.S.1977, 16–3–107(h) unconstitutional because it provides that no member of an administrative body can be compelled to testify as a witness in a hearing before that agency when the member is a material witness to an element of the defense of the person whose rights are being determined?"

6. Section 16–3–107(h), W.S.1977, provides:
  "(h) The agency in a contested case is subject to the discovery provisions of this section but neither the agency, nor any member, officer or employee shall be required to disclose information which is confidential or privileged under the law and no member of the agency shall be compelled to testify or give a deposition in a contested case. Evidence and discovery sought from the agency shall be by written application. If the agency

The hearing examiner did not rely on § 16–3–107(h)[6] as a basis for excluding the testimony of the three board members, but concluded, instead, that the testimony was irrelevant. Since § 16–3–107(h) was not invoked against appellant, we decline to issue an advisory opinion on the constitutionality of the statute as applied to suppress the testimony of a material witness.

### V

"As a matter of law, did Dr. Wegner, the superintendent, and the Board take the steps and observe the procedures that are necessary under the Administrative Procedures Act and the Wyoming laws dealing with continuing contract teachers, or did they act arbitrarily and capriciously in terminating his contract in which he had a property right?"

Appellant asserts the following reasons in support of his allegation that the superintendent and the board acted arbitrarily and capriciously in terminating his contract: (1) good cause for termination did not exist; (2) the evaluator-superintendent failed to furnish appellant adequate guidance; and (3) the termination is not supported by substantial evidence and may have been due to an improper motive on the part of the superintendent. We defer consideration of the substantiality of the evidence until part VII of this opinion.

*Good Cause*

We have interpreted the Wyoming Teacher Employment Act as requiring the existence of good cause in order for the school board to terminate the contract of a continuing contract teacher. *Board of Trustees of Weston County School District No. 1 v. Holso,* Wyo., 584 P.2d 1009, reh.

refuses to allow discovery in whole or in part the aggrieved party may apply to the district court for the district in which the hearing, deposition or other proceeding is being or is to be conducted for an order directed to the agency compelling discovery. The court shall enter such order as may be appropriate. The procedure provided for in this subsection for obtaining discovery from the agency is exclusive."

denied 587 P.2d 203 (1978); *Powell v. Board of Trustees of Crook County School District No. 1,* Wyo., 550 P.2d 1112 (1976); *Monahan v. Board of Trustees of Elementary School District No. 9,* Wyo., 486 P.2d 235 (1971). We set out a definition of good cause in *Powell v. Board of Trustees of Crook County School District No. 1,* supra, and said that the facts underlying the reason for dismissal

" * * * must bear reasonable relationship to the teacher's fitness or capacity to perform his duties in that position." 550 P.2d at 1119.

In *Powell* we said that an " 'inability to establish rapport with his students' " was not the sort of good cause contemplated by the Wyoming Teacher Employment Law and our prior cases:

" * * * [W]e hold that a general charge of 'inability to establish rapport with his students,' unsupported by definition and specific facts going straight to the charge, is insufficient, standing alone, to constitute 'other good or just cause' under the statute, or the good cause which is necessary to insulate the order of termination or dismissal against capriciousness and arbitrariness." 550 P.2d at 1119.

In its Findings of Fact and Conclusions of Law, the school board in the instant case specified incompetency as the ground for termination and defined incompetency to mean (a) the inability to communicate effectively with the professional staff; (b) the failure to communicate registration procedures in a timely and precise manner with the result that inaccurate information was submitted to the state department of education; (c) the absence of leadership qualities; and (d) the presence of divisive tendencies

in contacts with staff members. The district court affirmed the board's finding of incompetency as demonstrated by appellant's inability to communicate effectively and lack of leadership qualities.[7]

Incompetency is specified in § 21–7–110 [8] as proper cause for the termination, dismissal or suspension of a teacher. In exercising our appellate duties, however, we must review the specific charges and underlying facts which constitute the allegation of incompetency to determine whether they are related to the teacher's ability to perform the duties of his particular position.

The duties of an ERC program facilitator as developed by the Wyoming department of education include:

(1) "Facilitates development and implementation of ERC goals, objectives, activities and program accountability."

(2) "Facilitates activities of ERC staff and other personnel assigned to work out of the ERC to meet educational needs within the district."

(3) "Organizes pre-service and in-service education needs as identified by the ERC staff in cooperation with local district personnel and parents."

(4) "Develops publicity and information regarding services and functions of the ERC and disseminates within the ERC service area."

The qualifications necessary to perform these duties are also specified by the department of education and include:

(1) "Demonstrated competency in relating effectively with educators, parents, community organizations and agency personnel."

---

7. We note that the board's conclusion (b)—the failure to communicate registration procedures—is embodied in the more general conclusion (a)—the inability to communicate effectively. In addition, conclusion (d)—the presence of divisive tendencies—is a component of conclusion (c)—the absence of leadership. Therefore, we will treat, as did the district court, the inability to communicate effectively and the lack of leadership qualities as the operative causes for the termination of appellant's contract.

8. Section 21–7–110(a), W.S.1977, provides:
"The board may suspend or dismiss any teacher for incompetency, neglect of duty, immorality, insubordination, or any other good or just cause."
We said in *Powell v. Board of Trustees of Crook County School District No. 1,* supra, 550 P.2d at 1114, n. 3, that § 21–7–110 applies to termination as well as dismissal and suspension cases.

(2) "Ability to communicate effectively the services of the ERC to professional and lay individuals and groups."

Based on these operational guidelines we conclude that the ability to lead the ERC staff and communicate effectively with the staff and other educators are essential attributes for the performance of the facilitator position. We hold that a demonstrated absence of these abilities in one holding the position of ERC facilitator is good cause for termination of his contract.

*Guidance from Evaluator*

Appellant states in his brief:

"It is also a fundamental principle that the continuing contract teacher should be given guidance by the evaluator."

Appellant cites no authority for this "fundamental principle." Furthermore, the record indicates that Ririe was provided some guidance in that the superintendent-evaluator had discussed with him a number of perceived deficiencies prior to the formal evaluation in January, 1982. We conclude that any failure of Dr. Wegner to provide more complete direction does not amount to a violation of the Administrative Procedure Act or any other Wyoming law.

## VI

"As a matter of law does the charge or allegation of an 'inability to communicate effectively with the professional staff' present a standard of conduct that is sufficiently clear so that a teacher can be expected to conform to a standard, or is such a standard impossible for one person to control since communication takes action by both the one who speaks and the one who listens?"

Appellant cites *Powell v. Board of Trustees of Crook County School District No. 1,* supra, for the proposition that the termination of a teacher's contract must be

based upon the violation of "a definitive acceptable standard of professional conduct." 550 P.2d at 1118. We agree that a clear standard of conduct must be furnished to the teacher and its violation relied upon in order to justify termination. Under the circumstances of the present case, we believe that appellant was furnished such a standard.

The duties and qualifications embodied in the position description (appended to this opinion), and furnished to appellant, emphasize that the facilitator is expected to impart his knowledge and provide direction to those with whom he works in a manner susceptible of being understood. Indeed, the essence of the ERC facilitator position depends upon the ability to enlighten and assist others. We therefore hold that Ririe was furnished a standard sufficiently clear to enable him to conform his conduct to that standard.

## VII

"As a matter of law, are the findings of fact which remained in issue at the close of the proceeding, and which were necessary to support the termination of a continuing contract teacher, supported by *substantial* evidence?"

We said in *Monahan v. Board of Trustees of Elementary School District No. 9,* supra, 486 P.2d at 237:

" * * * [A] hearing on termination of a continuing contract teacher involves the question of whether there is good cause for termination. *There must not only be good cause but there must be substantial evidence before the board to show that there is good cause.* Absent either, a decision on the part of the board to terminate will be arbitrary." (Emphasis added.)

Section 16–3–114(c)[9] of the Wyoming Administrative Procedure Act directs this

---

**9.** Section 16–3–114(c), W.S.1977, provides in pertinent part:

"The reviewing court shall:

   *   *   *   *   *   *

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

   *   *   *   *   *   *

court upon review to determine that the findings of fact are supported by substantial evidence in the record. We have defined substantial evidence to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* supra, 549 P.2d at 1178.

■ Our review of the record convinces us that the conclusions by the school board that appellant lacked the ability to communicate effectively and to provide adequate leadership are supported by substantial evidence. All five district principals testified in support of the termination of Ririe's contract. They stated that they had received complaints from staff members with respect to the guidance received from appellant and his ability to explain procedures. Many members of the ERC staff testified that they could not understand appellant, that he did not adequately explain procedures, and that they felt confused following contact with him. They testified that they had no confidence in information supplied by appellant and had looked to outside sources for help. One staff member testified that she had threatened to resign because of her frustration in dealing with Ririe.

Based upon our independent review of the record, we hold that the board had before it substantial evidence of good cause to justify its decision to terminate appellant's contract. We therefore affirm the judgment of the district court affirming the termination of appellant's continuing contract of employment.

## APPENDIX

### Position Description

1. *Position Title:* ERC Program Facilitator
2. *Fundamental Objective:* Develop, organize and facilitate implementation of the ERC program. Monitor and improve the respective services.
3. *Reports to:* Administrator or other person designated by the local school superintendent. Coordinates with district school principals and support services personnel.
4. *Supervisory—Consultant Responsibility:* Monitors services provided by ERC staff. Consultative responsibility to ERC staff and district personnel.
5. *Duties:*
   a. Facilitates development and implementation of ERC goals, objectives, activities and program accountability.
   b. Assists in identifying handicaps which interfer with or impair learning.
   c. Facilitates activities of ERC staff and other personnel assigned to work out of the ERC to meet educational needs within the district.
   d. Facilitates identification and coordination of resources useful for educational purposes.
   e. Organizes pre-service and in-service education needs as identified by the ERC staff in cooperation with local district personnel and parents.
   f. Participates in curriculum modification and development of programs for children with learning problems.
   g. Develops publicity and information regarding services and functions of the ERC and disseminates within the ERC service area.
   h. Coordinates ERC services with the Wyoming State Department of Education and other appropriate organizations.
   i. Establishes an effective system for cataloging, disseminating and retrieving instructional materials and equipment.

*Limits of Authority:* Position is subject to policies and procedures as set forth for the ERC by the administering school district and the state ERC guidelines.

*Qualifications:*

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

a. At least five years of instructional supervisory and/or related educational experiences in the field of exceptionality.

b. Have experience in at least four of the seven ERC functions, one of which must be educational programming.

c. Demonstrated competency in relating effectively with educators, parents, community organizations and agency personnel.

d. Ability to identify and utilize resources to develop, implement and improve services of the ERC.

e. Ability to communicate effectively the services of the ERC to professional and lay individuals and groups.

f. Masters Degree in exceptionality (preferred) or in an area relating to exceptional children.

ROONEY, Chief Justice, concurring in part and dissenting in part.

I dissent from only that part of the majority opinion which turns on the fact that voir dire was conducted of the board members. The quotation concerning the position of two jurists in *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161 (1976), has reference to the minority position in that case on this point. Footnote 1 to the discussion of voir dire in that case reads:

"1. The voir dire section of this opinion represents only the expressions of Justice Rose and Judge Armstrong and is not the majority opinion on the subject of voir dire." 549 P.2d at 1165.

The dissent of Chief Justice Guthrie, in which Justice Thomas joined, sets forth the rationale for not allowing voir dire of the board. The majority opinion adequately resolved the first issue without reference to voir dire.

Also included in the voir dire section of *Board of Trustees v. Spiegel*, supra, (and thus not the majority holding) is a discussion on the rule of necessity which is referred to in the majority opinion but not addressed as a necessary issue. I agree that it need not be addressed in this case.